[Crim. No. 15622. Second Dist., Div. Two. Aug. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROSITA ESTHER BELVIN, Defendant and Appellant.

956

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Rosita Belvin appeals a judgment of conviction for possession of heroin (Health & Saf. Code, § 11500), contending that evidence at her trial had been seized during an illegal search and that statements used against her had been obtained in violation of her rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In January 1968 defendant was wanted by the authorities as a parole violator. The police also had information she was involved with narcotics and living with a dope peddler named Jesse Hill. Officer Welch, two other police officers, and two parole officers, went to defendant's address, and when she responded to their knock on the door, an officer told her, "Police officers. You're under arrest. Open the door." Defendant opened the door, walked to the bedroom, and sat down on a bed. On the floor by the bed next to where she sat was a purse. Two other women were in the bedroom, seated opposite the defendant. The officers took the three women into the living room for security purposes, and defendant was told she was under arrest for violation of parole. Officer Welch picked up the purse from the floor, noted it was exceptionally heavy, opened it, and found several rolls of coins inside and two balloons of heroin in its zippered compartment. He took the purse into the living room, removed a roll of coins from the purse, and asked defendant if these were her coins. She replied they were. Officer Welch then advised her of her constitutional rights under *Miranda* v. *Arizona, supra,* and commented that the heroin was probably hers too. Later Jesse Hill arrived at the house, and in the presence of defendant he was told he was under arrest for violation of parole and for possession of heroin. At that point defendant spoke up and said that Hill did not live there and that "everything in the house was hers."

At her trial defendant unsuccessfully sought to exclude from evidence: the heroin, her statement about the coins, and her statement that everything in the house was hers.

1. Defendant attacks the search of her purse, arguing, first, the search was without a warrant, without probable cause, and without relationship to her arrest for violation of parole, and, second, the search violated the rights of the two other women in the house.

We start with the proposition that the police, when arresting a parole violator, have sufficient authority to search the person of the violator and any immediate extensions of the

person, whether or not they have probable cause to believe they will find evidence of other parole violations or other crimes. (*People* v. *Hernandez,* 229 Cal.App.2d 143 [40 Cal. Rptr. 100].) Without a search warrant, however, they cannot conduct a general search of the place where the arrest takes place. ▮ The limitations on search incident to arrest have been recently restated by the United States Supreme Court in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], an opinion which specifies the areas to which such a search may extend. ''When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary item must, of course, be governed by a like rule. A gun on the table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'' (*Id.* at p. 694.)

It is apparent from *Chimel* that a search of an arrested person is limited to the person of the arrestee and the area under that person's immediate control and that the boundaries of the area of immediate control are now more closely circumscribed than they have been in the past. (Cf. *Harris* v. *United States,* 331 U.S. 145 [91 L.Ed. 1399, 67 S.Ct. 1098]; *United States* v. *Rabinowitz,* 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430].) But it is equally evident that normal extensions of the person remain subject to search and that articles customarily carried by an arrested person fall within the area of his immediate control. In the category of such articles we include a woman's purse, a man's wallet, a jacket, a hat, an overcoat, and a brief case in use at the time of arrest, even though these articles may not be on the immediate person of the arrestee at the moment of arrest. Such articles not only serve as possible sources of concealed weapons and of evidentiary items but also normally accompany the arrested person

on his removal to some other place. Their search thus serves the dual function of security and of legitimate investigation. We conclude that defendant's purse, apparently in use by her at the time of her arrest, legally amounted to an extension of her person and could be searched on her arrest. Whether the search of the purse took place before or after defendant's physical removal to another room we consider wholly fortuitous.

We are also of opinion that the police had reasonable cause to believe the purse belonged to defendant and not one of the two other women. The purse was located nearest to defendant, neither of the other women identified it as hers, neither attempted to take it with her when moved to the other room, neither objected to its search. The police had a sufficient basis from which to conclude that the purse belonged to defendant.

2. We next consider defendant's statement admitting ownership of the coins. At the time she was asked about the coins she was in custody. Her statement that the coins were hers was an admission against interest, because it implied that the purse and its contents, including the heroin, were also hers. Because she had not yet been advised of her constitutional rights, this statement should not have been received in evidence. (*Miranda* v. *Arizona,* 384 U.S. 436, 444, 445, 467, 477, 478 [16 L.Ed.2d 694, 706, 707, 719, 725, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

However, we conclude that the error in admitting defendant's statement about the coins was nonprejudicial beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].) Subsequent to the time defendant had been advised of her rights, she interrupted a conversation between the police and Hill to which she was not a party and in which she had not been mentioned, to say that everything in the house was hers. This statement was incriminating, because a direct inference from it was that the heroin in her purse belonged to her. This statement and the evidence of the heroin itself furnished such strong proof of guilt that we have concluded her earlier statement admitting possession of the coins did not significantly contribute to her conviction.

3. Defendant argues that her statement that everything in the house was hers was the product of the earlier, illegally obtained statement admitting ownership of the coins. ''Where an accused makes one confession and then testifies or

upon subsequent questioning again confesses, it is presumed that the testimony or second confession is the product of the first. [Citations.]'' (*People* v. *Johnson,* 70 Cal.2d 541, 547 [75 Cal.Rptr. 401, 450 P.2d 865].) However, we think it clear the second statement was not induced by the first. Defendant's first statement only admitted possession of coins, an admission which, although contrary to her interest, was not irrevocably incriminating. She could still have credibly taken the position that Hill possessed the heroin found in her purse, since he was living with her and might well have used her purse to cache his narcotics. Only after Hill had been charged with possession of heroin did defendant claim ownership of everything in the house. Manifestly, she made this statement in order to protect Hill, who had been told he was under arrest for possession of heroin. Her motivation for the statement—to protect her paramour—was sufficiently clear to rebut the presumption she was impelled to make it because of the futility of denying guilt as a consequence of her earlier statement. Since the two statements were not causally connected, the second statement was properly received in evidence. (*People* v. *Alesi,* 67 Cal.2d 856, 863 [64 Cal.Rptr. 104, 434 P.2d 360]; *People* v. *Quicke,* 71 Cal.2d 502, 516 [78 Cal.Rptr. 683, 455 P.2d 787].)

The judgment is affirmed.

Roth, P. J., and Wright, J., concurred.