[Civ. No. 44454. Second Dist., Div. Two. Sept. 5, 1974.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
OPAL HENRY, Real Party in Interest.

COUNSEL

C. Stanley Trom, District Attorney and Arthur S. Zittell, Deputy District Attorney for Petitioner.

No appearance for Respondent.

Randolph E. Siple and Siple & Orrock for Real Party in Interest.

OPINION

**FLEMING, Acting P. J.**—The People seek to reverse an order of the superior court suppressing evidence in the murder prosecution of Opal Henry, real party in interest. The suppressed evidence, found during a warrantless search of Henry's residence after the discovery of a dead body in her living room, includes a revolver (the death weapon) from a bedroom dresser drawer, ammunition for the revolver from the same drawer, and ammunition from other rooms of the residence.

About 10:30 in the evening of 17 February 1974 officers responding to an emergency call discovered the body of Augusta Spratt, Jr., in the living room of Henry's residence in Ventura. From bystanders the officers learned that neighbors summoned by Henry discovered the wounded Spratt in the street and carried him into Henry's residence, where he died. Inside, the officers found Henry sitting on the living room couch visibly upset. She complained she was cold and her arm had been bruised. In answering the telephone she told the caller, "God save me, God save me, I need money, he's dead." She then asked if she could go into the bedroom, "It is just something I need to get."

After the officers secured the premises, Officer Cotner asked Henry what happened. She replied that Spratt forced his way into her house and said he was going to have sex with her; when she refused, Spratt grabbed her arm, and they tussled. Cotner asked if he could look through the house. Henry said she would go with him and show him. She then said she shot at Spratt but missed him and hit the wall. What with? asked Cotner. A gun, she replied. Where's the gun? In a dresser drawer in the bedroom, she said, and she offered to show Cotner where it was. Another officer then escorted Henry out of the residence on her way to the police station, and Cotner entered the dimly lit bedroom, shone his flashlight into the partially open dresser drawer, and saw a revolver and ammunition.

Later that night, police investigators seized the entire bedroom dresser drawer and its contents. In a search of the residence, investigators seized additional ammunition in a hallway closet and a kitchen drawer, two purses containing ammunition in the living room, and other items of possible evidentiary value from the bedroom, kitchen, and living room.

The superior court suppressed all evidence except that found in the living room, concluding (1) that Henry consented to a search for the gun on the condition that she lead the search, and (2) that exigent circumstances did not justify a search of the residence without a warrant. ■ Since these conclusions do not pass upon the credibility of witnesses or the weight of conflicting evidence, but rather involve the legal effect of undisputed facts, we are not bound by the conclusions of the trial court but are required to exercise our independent judgment on these matters. (Cf. *People* v. *Superior Court (Peck)* 10 Cal.3d 645, 648-649 [111 Cal.Rptr. 565, 517 P.2d 829].) We find ourselves in disagreement with both the trial court's conclusions, and we reverse the order of suppression.

1. ■ From our appraisal of the facts we think it clear that Henry's statement about the location of the gun amounted to an implied consent to look for it. Words may imply consent as well as express it. (Cf. *People* v. *Harrington,* 2 Cal.3d 991, 995 [88 Cal.Rptr. 161, 471 P.2d 961].) In *People* v. *Smith,* 210 Cal.App.2d 252 [26 Cal.Rptr. 620], a police officer asked a defendant, just arrested for theft, where the registration slip for his automobile was. "It should be in the glove compartment," replied defendant. During an inspection of the glove compartment the officer discovered a large envelope containing stolen payroll checks. The court concluded that "[t]he officer could reasonably interpret this statement as indicating that it was all right for him to look into the glove compartment for the registration." (210 Cal.App.2d at p. 256.) In *Nerell* v. *Superior Court,* 20 Cal.App.3d 593 [97 Cal.Rptr. 702], police officers discovered marijuana while arresting a defendant in his bedroom. When the officers discussed their discovery with a codefendant in the living room, codefendant blurted out, "All right, you've got me. It is in the case." The officers searched a briefcase in the bedroom and found inside the case five packages of amphetamine pills and more marijuana. The court concluded the codefendant's "spontaneous implied admission to the effect that the briefcase contained contraband was sufficient to constitute an invitation to the officers to examine the contents." (P. 600.) We find a similar invitation to search implied in the statement of Henry. Seated in the living room of her residence, she told police officers investigating the events which led to the discovery of a dead body in her living room that a crucial piece of evidence,

the potential death weapon, was located in a bedroom dresser drawer a few feet away.

Was the consent to search conditional? A consent to be exercised only in a certain manner? We think not. In rejecting this argument we observe, first, that the consent was not expressly limited, that no formal terms and conditions were annexed to it. Second, the offer to show the police the location of the gun was not contradictory of an unconditional consent to search. As we view it, the offer looked toward a simplification of the police officer's task, a simplification of benefit to both parties—the police by expediting discovery of the death weapon and Henry by reducing unnecessary rummaging through her effects. Third, the circumstances were so inappropriate for conditional consent, that we see no basis for inferring its ·existence. A church might consent to visitation of tourists on condition they take their shoes off; when it calls for the fire department it would be unreasonable to infer a similar condition no matter what was said. We think Henry was bound to anticipate that as a consequence of her disclosure of the location of the gun she had recently fired, the officers would go into the bedroom to get the gun from the dresser drawer. We infer that if she had intended to couple consent to the officers' search with the condition that she accompany them, she would not have told them exactly where the gun could be found. We conclude that Henry consented unconditionally to the search for the gun.

2. ■ Exigent circumstances likewise justified the search and seizure of the dresser drawer containing the gun as well as the general search of the homicide scene for evidence to explain the circumstances of Spratt's death. (*Warden* v. *Hayden,* 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]; *People* v. *Sirhan,* 7 Cal.3d 710, 737-740 [102 Cal.Rptr. 385, 497 P.2d 1121]; *People* v. *Curley,* 12 Cal.App.3d 732, 738-739 [90 Cal.Rptr. 783].)

Directly in point is *People* v. *Wallace,* 31 Cal.App.3d 865 [107 Cal. Rptr. 659], where the police found defendant's wife in his residence bleeding to death from an apparent stab wound. Defendant gave a suspicious explanation for his wife's injury. After he had gone with an officer to the police station for a further interview, a police evidence technician searched the residence without warrant or consent, and in a kitchen drawer he found the death weapon, a bloodstained knife. The trial court's refusal to suppress the knife as evidence was upheld by the appellate court, which cited with approval "a number of decisions from other jurisdictions upholding an immediate warrantless search of a homicide scene on the basis of exigent circumstances or general notions of reasonableness. (*Longquest* v. *State*

(Wyo. 1972) 495 P.2d 575; *Brown* v. *State* (Tex.Crim.App. 1971) 475 S.W.2d 938; *State* v. *Sample* (1971) 107 Ariz. 407 [489 P.2d 44]; *State* v. *Oakes* (1971) 129 Vt. 241 [276 A.2d 18]; *State* v. *Chapman* (Me. 1969) 250 A.2d 203; *Stevens* v. *State* (Alaska 1968) 443 P.2d 600.)

". . . . . . . . . . . . . . . . . . .

". . . common sense and good investigative procedures dictated that the police retain possession of the premises and conduct a prompt and diligent investigation to ascertain the cause of the victim's death.

"In *Johnson* v. *United States* (1948) 333 U.S. 10, 14-15 [92 L.Ed. 436, 440-441, 68 S.Ct. 367], the Supreme Court declared that 'There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with.' We find this to be such a case and believe that it would be patently absurd to conclude otherwise.

"We find that, under the circumstances here present, the conduct of the police officers was entirely reasonable and that defendant's constitutional rights were not abridged . . . ." (31 Cal.App.3d at pp. 868, 871.) (See *People* v. *Bagwell,* 38 Cal.App.3d 127, 130-132 [113 Cal.Rptr. 122]; cf. *People* v. *Modesto,* 62 Cal.2d 436, 446-447 [42 Cal.Rptr. 417, 398 P.2d 753], Traynor, C. J.)

Similar reasoning is applicable here. The police discovered a dead man, apparently the recent victim of foul play, in a residence which might contain crucial and easily destroyed evidence relating to the homicide. In these circumstances we consider it both the right and the duty of the police, in the interest of society and of potential suspects, to conduct a prompt and diligent investigation at the scene of the homicide for clues to its cause and its perpetrator.

Let a writ issue directing the Superior Court of the County of Ventura to set aside its order suppressing evidence.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied September 23, 1974. The petition of respondent and real party in interest for a hearing by the Supreme Court was denied October 30, 1974.