[Crim. No. 17911. First Dist., Div. Three. Apr. 23, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAYTON B. PACE, Defendant and Appellant.

## COUNSEL

Bonjour, Gough, Stone & Remer and Jules F. Bonjour, Jr., for Defendant and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, Jack. R. Winkler, Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HALVONIK, J.—** **(1)** We hold that the warrantless search of a container, removed from a person incident to arrest and reduced to the

exclusive control of the police, is unlawful because unjustified by any exigent circumstances.

The arrest occurred on March 20, 1977. Officers Jack Dahl and Ronald Packard were on patrol in separate cars. Both were directed by radio to Union City's Casa Verde Park to investigate complaints about an intoxicated man there. Packard arrived first and saw a man who "seemed to stagger quite heavily, almost in a somewhat dazed fashion . . . ." Packard said hello and asked him how things were going and "he just kind of stared at me." Packard asked him how he felt and he said "I'm okay. I'm making it home. I'm fine." He said that he lived "over there." Packard asked for identification and the man felt in his pockets but produced nothing.

Less than a minute passed before Dahl arrived and told Packard "that he thought he knew the individual was Mr. Pace." Pace was carrying a lunchbox and Dahl told him "to set the box down for my own safety." Pace complied, setting the lunchbox in front of Dahl. Dahl moved it to insure that it was beyond Pace's reach. Dahl, like Packard, noticed Pace's clumsy movements, thick tongue and incapacity to answer simple questions promptly. Dahl detected no smell of alcohol, noticed that Pace's eyes were dilated, decided that he was not in need of medical assistance and concluded that he was under the influence of PCP or some other drug. Dahl handcuffed Pace and, without searching him, put him in the back of the patrol car. Dahl then returned to the lunchbox and "opened it up looking for some sort of identification, if the subject had any, and the possible intoxicant that he was under the influence of." Dahl found exactly what he was looking for. The lunchbox contained, among other items, Pace's driver's license, PCP, marijuana and cocaine.

Pace pleaded guilty to a violation of Health and Safety Code section 11350, possession of cocaine. On this appeal, pursuant to Penal Code section 1538.5, subdivision (m), the sole question presented is whether the warrantless search of appellant's lunchbox violated the constitutional guarantees prohibiting unreasonable searches and seizures. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.)

The Attorney General submits that there was nothing dubious about the search and cites *People* v. *Belvin* (1969) 275 Cal.App.2d 955 [80 Cal.Rptr. 382] for the proposition that a search incident to arrest is not unlawful even when it extends to the inside of a container carried by a person when arrested.

Pace does not quarrel with the Attorney General's interpretation of that authority but contends that it is contradicted by the United States Supreme Court's opinion in *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476].

In *Chadwick,* federal agents seized a 200-pound footlocker incident to the arrest of three men, two of whom had just placed it in the trunk of an automobile. The arrest occurred before the trunk was closed. The locked footlocker, containing marijuana, was opened by unknown means after it had been removed by the agents to the federal building in Boston. The agents had probable cause to believe marijuana was in the footlocker and the question, as the government posed it, was " '[w]hether a search warrant is required before federal agents may open a locked footlocker that is properly in their possession and that they have probable cause to believe contains contraband.' " (433 U.S. at p. 7, fn. 3 [53 L.Ed.2d at p. 546].) The question was answered affirmatively because "[t]here being no exigency, it was unreasonable for the government to conduct this search without the safeguards a judicial warrant provides." (433 U.S. at p. 11 [53 L.Ed.2d at p. 548].) "[T]he Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." (*Id.* at p. 15 [53 L.Ed.2d at p. 551].)

Conceding that Pace's lunchbox was reduced to the exclusive control of the police before it was searched, the Attorney General insists that there is a good deal of difference between a 200-pound footlocker and appellant's lunchbox and points to the following language as evidence that the decision in *Chadwick* permits a warrantless search incident to arrest of anything within the immediate control of the person arrested: "When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' *Chimel* v. *California,* 395 U.S., at 763. See also *Terry* v. *Ohio,* 392 U.S. 1 (1968)." (*Id.* at p. 14 [53 L.Ed.2d at p. 550].)

But the question here is whether a warrantless search may be justified after a container has been removed from the immediate control of the

person arrested and there is, therefore, no longer any danger that he will seize a weapon or destroy evidence of a crime.[1]

That *Chadwick* cannot be confined to cases of bulky footlockers is inferable not only from its reasoning but by the Supreme Court's decision to return to the Court of Appeals, "for further consideration in light of *United States* v. *Chadwick,*" the case of *Schleis* v. *United States* (1977) 433 U.S. 905 [53 L.Ed.2d 1089, 97 S.Ct. 2968]. Schleis, like Pace, was arrested when he appeared to be under the influence of drugs. He was carrying a locked briefcase at the time. At the police station, an officer forced open the briefcase and discovered cocaine. Prior to *Chadwick,* the Eighth Circuit had found the search a lawful one (*United States* v. *Schleis* (8th Cir. 1976) 543 F.2d 59) but on remand it reached the opposite result. (*United States* v. *Schleis* (8th Cir. 1978) 582 F.2d 1166, en banc.)

In *Schleis II* the court rejected the government's attempt to distinguish *Chadwick* as a special rule applicable only to bulky objects: "The contents of a briefcase are entitled to the same protection of the Fourth Amendment as the contents of a footlocker." (582 F.2d 1170.) Whether the briefcase was searched at the place of arrest or at the police station was also found immaterial: "[T]he critical factor is the extent to which the property is within the control of the law enforcement officers, rather than the amount of time or space between the arrest and the search." (*Id.* at p. 1172.) The court held that the justification for a warrantless search "evaporates once the officers seize the luggage or other personal property and reduce it to their exclusive control." (*Id.*) We think the *Schleis II* analysis of *Chadwick* is correct.[2]

---

[1] Just as in *Chadwick,* the officers here had "no reason to believe that the [lunchbox] contained explosives or other inherently dangerous items, or that it contained evidence which would lose its value unless . . . opened at once." (433 U.S. at p. 4 [53 L.Ed.2d at p. 544].)

[2] So do most courts that have considered the question. See *United States* v. *Johnson* (5th Cir. 1979) 588 F.2d 147 (duffel bag); *United States* v. *Stevie* (8th Cir. 1978) (en banc) 582 F.2d 1175 (suitcase); *United States* v. *Jackson* (8th Cir. 1978) 576 F.2d 749 (attache case); *United States* v. *Berry* (7th Cir. 1977) 560 F.2d 861 (attache case), vacated on other grounds; *United States* v. *Berry* (7th Cir. 1978) 571 F.2d 2; *United States* v. *Vallieres* (D.Conn. 1977) 443 F.Supp. 186 (suitcase); *United States* v. *Ester* (S.D.N.Y. 1978) 442 F.Supp. 736 (suitcase); and see *United States* v. *Isom* (2d Cir. 1978) 588 F.2d 858, 861; *United States* v. *Fontecha* (5th Cir. 1978) 576 F.2d 601; *United States* v. *Diggs* (3d Cir. 1977) 569 F.2d 1264; *United States* v. *Marchand* (2d Cir. 1977) 564 F.2d 983, 991; *State* v. *Kaiser* (1978) 91 N.M. 611 [577 P.2d 1257]; cf. *State* v. *Kaluna* (1974) 55 Hawaii 361 [520 P.2d 51]; *Young* v. *State* (Del. 1975) 339 A.2d 723; *Shipman* v. *State* (1973) 291 Ala. 484 [282 So.2d 700] affirming 51 Ala.App. 80 [282 So.2d 696]; *State* v. *Elkins* (1966) 245 Ore. 279 [422 P.2d 250]. On the other hand, the Ninth Circuit, in *United States* v. *Finnegan* (9th Cir. 1977) 568 F.2d 637, held that luggage taken directly from an automobile may be

Before it was searched, Pace set down his lunchbox and Officer Dahl had, wisely and cautiously, moved it well out of reach; additionally, Pace had been handcuffed and placed in the back seat of the patrol car. Pace, at the time the lunchbox was searched, had no access to it and could neither extract a weapon from it nor destroy any of its contents. (See *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 460, 461, fn. 18 [29 L.Ed.2d 564, 579-580, 91 S.Ct. 2022].) Warrantless searches incident to arrest are justified on the ground that it would be senseless to require "the arresting officer to calculate the probability that weapons or destructible evidence may be involved." (*United States* v. *Chadwick, supra,* 433 U.S. at p. 15 [53 L.Ed.2d at p. 550].) But where the police have the item in their exclusive control, no calculation is necessary and the justification for a warrantless search no longer obtains. When the justification no longer obtains, a warrant is necessary because "the scope of a warrantless search. must be commensurate with the rationale that excepts the search from the warrant requirement." (*Cupp* v. *Murphy* (1973) 412 U.S. 291, 295 [36 L.Ed.2d 900, 905-906, 93 S.Ct. 2000].) (Fn. omitted.) (And see *Coolidge* v. *New Hampshire, supra,* 403 U.S. at pp. 466-467 [29 L.Ed.2d at pp. 583-584]; *People* v. *Escudero* (1979) 23 Cal.3d 800, 811 [153 Cal.Rptr. 825, 592 P.2d 312]; *People* v. *Smith* (1972) 7 Cal.3d 282, 286 [101 Cal.Rptr. 893, 496 P.2d 1261].)

■ The warrant requirement must be satisfied in every· case where exigent circumstances do not justify ignoring it. A warrantless search is not a reasonable search unless the police establish "that it was impracticable for them to obtain a search warrant . . . ." (*Vale* v. *Louisiana* (1970) 399 U.S. 30, 35 [26 L.Ed.2d 409, 414, 90 S.Ct. 1969].) In California, that constitutional principle is reflected in the rule placing upon the prosecution the burden of establishing the legality of any search not conducted pursuant to warrant. (*People* v. *Norman* (1975) 14 Cal.3d 929, 933 [123 Cal.Rptr. 109, 538 P.2d 237]; *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807-812 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Haven* (1963) 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)[3]

---

searched without a warrant. In commenting on *Finnegan,* the Eighth Circuit observed that "no Supreme Court decision directly supports the Ninth Circuit's position, and every court of appeals decision supporting the position was decided prior to the Supreme Court's decision in *Chadwick.*" (*United States* v. *Stevie, supra,* 582 F.2d at p. 1179.)

[3] "Defendant made out a prima facie case of the illegality of his arrest and the search and seizure of the blue suitcase and its contents when he established that they were made without a warrant. The burden then rested on the prosecution to show proper justification." (*People* v. *Cruz* (1964) 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889].) The warrant requirement is, of course, not a mere "formality" to be balanced against

The Attorney General does not contend that the search of Pace's lunchbox was justified by any exigency making it impracticable to obtain a warrant. In light of Officer Dahl's statement that he looked inside the lunchbox for "identification . . . and the possible intoxicant," there is no room for such an argument.[4]

Instead, the Attorney General argues that "in terms of expectation of privacy, there is a world of difference between a massive, double-locked footlocker . . . and an unlocked lunch pail . . . ." But, as we have already indicated, mass cannot be a significant factor and locks have nothing to do with legitimate expectations of privacy where the police are concerned. We lock our things to keep out those disposed to violate the law, not those who enforce it.[5]

police convenience. (*McDonald* v. *United States* (1948) 335 U.S. 451, 455 [93 L.Ed. 153, 158, 69 S.Ct. 191].) "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers . . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." (*Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 440, 68 S.Ct. 367].) That the officer's suspicions about what a search will reveal are confirmed, as they were here, is beside the point because such a search "bypasses the safeguards provided by an objective determination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." (*Beck* v. *Ohio* (1964) 379 U.S. 89, 96 [13 L.Ed.2d 142, 147, 85 S.Ct. 223].)

[4]Since Dahl knew Pace and had decided he did not need medical attention, there was no exigency supporting a warrantless search for identification. In an emergency, where a person is unconscious, it has been held that a warrantless search of a briefcase for the purpose of discovering identity is justified. (*United States* v. *Haley* (8th Cir. 1978) 581 F.2d 723.) Absent an emergency, the authority of the police to demand written identification, much less search for it, is not settled. See dissents from dismissal of certiorari as improvidently granted in *Wainwright* v. *City of New Orleans* (1968) 392 U.S. 598 [20 L.Ed.2d 1322, 88 S.Ct. 2243].

[5]Justice Jackson's question "If it were wrong to open a sealed envelope . . . would it have been right if the mucilage failed to stick?" (*Harris* v. *United States* (1947) 331 U.S. 145, 197 [91 L.Ed. 1399, 67 S.Ct. 1098] (dis. opn.)) invites but one answer. Of course it could be argued that a lunchbox should not receive the same constitutional protection as a footlocker or even a briefcase. The spectre of the police rifling through the papers in a briefcase for no reason other than a suspicion that its carrier is intoxicated presents the issue before us in a most vivid form. But there is no reason to suppose that people who carry lunchboxes value their privacy less than people who carry briefcases. Moreover, since no principled distinction can be drawn between lunchboxes and other containers a

The Attorney General also argues that since a search of Pace's person incident to arrest would not have been objectionable and Pace could justifiably rely on no greater "expectation of privacy" in things that he was carrying, the search of his lunchbox must be as unobjectionable as a search of his person. (See *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507].) ■ The search of a person incident to arrest, however, is not permitted because of the absence of a legitimate expectation of privacy. On the contrary, people assume, and correctly so, that they may go about unmolested unless the police have articulable reasons that justify an invasion of their privacy. (See *Terry* v. *Ohio* (1968) 392 U.S. 1, 16-17 [20 L.Ed.2d 889, 902-903, 88 S.Ct. 1868]; *Katz* v. *United States, supra,* 389 U.S. at p. 350, fn. 4 [19 L.Ed.2d at p. 581].) A warrantless search of the person is permitted because of the need to protect the arresting officers as well as others and as a precaution against the destruction of evidence. (See *United States* v. *Fontecha* (5th Cir. 1978) 576 F.2d 601; *United States* v. *Matlock* (8th Cir. 1977) 558 F.2d 1328.) But the person arrested does not become an outlaw no longer able legitimately to entertain expectations of privacy. The person arrested has not been convicted and is presumed innocent. That is why the Supreme Court has rejected the very theory advanced by the Attorney General. In *Mincey* v. *Arizona* (1978) 437 U.S. 385, [57 L.Ed.2d 290, 98 S.Ct. 2408], the court was confronted with the argument that a warrantless search was proper because "Mincey forfeited any reasonable expectation of privacy . . ." when he shot a police officer. The court answered "that this reasoning would impermissibly convict the suspect even before the evidence against him was gathered." (437 U.S. at p. 391 [57 L.Ed.2d at p. 299].) (Fn. omitted.) (And see *Michigan* v. *Tyler* (1978) 436 U.S. 499, 505-506 [56 L.Ed.2d 486, 495-496, 98 S.Ct. 1942].)

Pace's expectation of privacy was no less legitimate than Chadwick's. (*United States* v. *Chadwick, supra,* 433 U.S. at pp. 7, 11 [53 L.Ed.2d at pp. 545-546, 548]; and see Amsterdam, *Perspectives on the Fourth Amendment* (1974) 58 Minn.L.Rev. 349, 357-358, 382-385, 402-404; Note, *A Reconsideration of the Katz Expectation of Privacy Test* (1977) 76 Mich.L.Rev. 154; Note, *The Reasonable Expectation of Privacy* (1976) 9 Ind.L.Rev. 568.)

---

rule creating such a distinction would have the undesirable effect of confusing those who enforce the law. As Professor Amsterdam has warned: " . . . if some discipline is not enforced, if some categorization is not done, if the understandable temptation to be responsive to every relevant shading of every relevant variation of every relevant complexity is not restrained, then we shall have a fourth amendment with all of the character and consistency of a Rorschach blot." (Amsterdam, *Perspectives on the Fourth Amendment* (1974) 58 Minn.L.Rev. 349, 375.)

In conclusion, we note that although some courts have held that the rule in *Chadwick* has prospective application only (see, e.g., *United States* v. *Choate* (9th Cir. 1978) 576 F.2d 165), the Attorney General has not urged the point here and, we think, for good reasons. *Chadwick* announced no dramatic departure from previous law. The departure occurred when the United States Supreme Court, in *Chimel* v. *California* (1969) 395 U.S. 752, 768 [23 L.Ed.2d 685, 696-697, 89 S.Ct. 2034], overruled *United States* v. *Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430] and *Harris* v. *United States* (1947) 331 U.S. 145 [91 L.Ed. 1399, 67 S.Ct. 1098], and when that court in *Coolidge* v. *New Hampshire, supra,* 403 U.S. 443 reestablished the primacy of the warrant requirement. The principles upon which those decisions were based have been firmly and consistently followed by the California Supreme Court. (See, e.g., *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], *People* v. *Norman, supra,* 14 Cal.3d 929; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]. And see *United States* v. *Schleis, supra,* 582 F.2d at p. 1174; *State* v. *Kaiser* (1978) 91 N.M. 611 [577 P.2d 1257, 1261].)

The judgment is reversed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied May 23, 1979, and respondent's petition for a hearing by the Supreme Court was denied July 12, 1979. Clark, J., was of the opinion that the petition should be granted.