[Crim. No. 18751. First Dist., Div. One. Dec. 21, 1979.]

THE PEOPLE, Plaintiff and Appellant, v.
STEVEN BENJAMIN FLORES, Defendant and Respondent.

[Crim. No. 19062. First Dist., Div. One. Dec. 21, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN BENJAMIN FLORES, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, Eugene W. Kaster, Stan M. Helfman, Derald E. Granberg and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Appellant and Plaintiff and Respondent.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Robert P. Mason, Deputy State Public Defender, James C. Hooley, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Appellant and Defendant and Respondent.

OPINION

**RACANELLI, P. J.**—In these consolidated appeals, we consider the lawfulness of a warrantless search immediately following a valid arrest and the validity of an ensuing search warrant. We conclude that both of the challenged searches were lawful thus requiring reversal of the order of dismissal in Criminal No. 18751 and affirmance of the judgment in Criminal No. 19062. We explain our reasons hereafter.

STATEMENT OF THE CASE

*Criminal No. 18751:* Defendant was arrested and charged with violations of Health and Safety Code sections 11378 (possession for sale of phencyclidine or PCP) and 11359 (possession of marijuana for sale) and four prior felony convictions. Following arraignment and plea, defendant moved to suppress certain evidence seized at the time of his arrest. Upon conclusion of the evidentiary hearing, the motion was granted and both counts were ultimately ordered dismissed; the People appeal the order of dismissal.[1]

*Criminal No. 19062:* Defendant was separately charged with a violation of Health and Safety Code section 11378 (and similar prior felony

---

[1]While the record is unclear, the parties agree that the resulting order of dismissal was made under the authority of Penal Code section 1385. Such order is properly appealable (Pen. Code, § 1238, subd. (a)(7)); the defendant makes no contrary contention.

convictions) as a result of evidence seized during a subsequent warrant search of his motel room. Defendant thereafter challenged the validity of the search warrant through a motion to suppress. Following denial of the motion, defendant entered a plea of guilty and thereafter instituted this appeal from the resulting judgment of conviction. (See Pen. Code, § 1538.5, subd. (m); Cal. Rules of Court, rule 31(d).)

## FACTS

█ The facts in the record before us are undisputed.

*Criminal No. 18751:*[2] On June 7, 1978, at about 8:30 p.m., Detective Schlim of the Fremont Police Department—accompanied by several other officers—approached the defendant, who was seated in the lobby of the Thunderbird Motel; Detective Schlim knew that the defendant was wanted on a "no-bail" felony arrest warrant. A canvas shoulder bag lay at defendant's feet.[3] Upon the officers' approach, defendant "lunged" forward thrusting his right hand into one of the bag's open pockets. A struggle ensued eventually resulting in defendant being forcibly subdued and handcuffed. While some of the officers restrained the defendant, who continued to resist while lying on the floor, a search of defendant's person was conducted; the police discovered certain papers, keys, a sheathed folding knife and a small amount of a suspected drug substance. Placing these items in small piles on the floor within easy reach, Detective Schlim then immediately proceeded to search the canvas shoulder bag, situated within three feet of the struggling defendant, for weapons or contraband; the search, concluded within two minutes of the initial confrontation, yielded a plastic bag filled with nineteen gram-sized packages containing PCP and a quantity of marijuana.

*Criminal No. 19062:* Later that same evening a fellow officer (experienced in the field of narcotics and drug investigation and identification) obtained a warrant to search Thunderbird Motel room 223

---

[2]As correctly contended by defendant, we may only consider the testimony adduced during the superior court suppression hearing since the record discloses no indication that the parties either stipulated to, or relied upon, the evidence presented at the preliminary examination. (See *People v. Cagle* (1971) 21 Cal.App.3d 57, 60-61 [98 Cal.Rptr. 348].)

[3]The shoulder bag or "pack" was described as 18" x 18" in size with a smaller pocket affixed to each side of the bag's larger or main pocket. The pockets contained buckles but no locking devices; straps were attached to the bag itself for the purpose of permitting it to be "carried on the shoulder."

registered to the defendant for—inter alia—PCP and certain paraphernalia associated with the processing and trafficking of the illegal substance. The supporting affidavit, reproduced in relevant part below,[4] asserted that in addition to the contraband found in the shoulder bag, some of the papers discovered in the course of the body search were receipts for the purchase of items commonly used in the manufacture and sale of PCP, an activity frequently transacted in motel rooms. Nighttime service was requested to effect execution of the warrant that evening while the premises were being secured to prevent possible destruction or removal of the evidence during the interim. The search was performed shortly after midnight resulting in the seizure of evidence upon which the underlying offense is based.

---

[4]The affidavit of Sergeant Richard A. Cox stated in part: "On 06/07/78, affiant personally observed Steven Benjamin FLORES at about 2015 hours in the motel lobby at the Thunderbird Motor Lodge, located at 5400 Mowry Avenue, Fremont, California. Affiant recognized this person as Steven Benjamin FLORES from having previously viewed a photograph of him and from having previously, personally observed him. [¶] Affiant and other officers physically arrested Steven Benjamin FLORES for the above mentioned outstanding warrant. Incidental to this arrest, affiant observed Detective John R. SCHLIM, of the Fremont Police Narcotics unit, remove a gram sized corner of a plastic baggie containing an off-white crystalline substance which is consistant [sic] in appearance and packaging with Phencylidine [sic], from FLORES right breast pocket. Affiant also observed SCHLIM remove a key marked Thunderbird Motor Lodge #223 from FLORES right front pant pocket. Affiant also observed SCHLIM remove the following papers from FLORES wallet: [¶] 1) Receipt #5188, dated 05/30/78, to Paul AMATO for a vacuum pump. [¶] 2) Receipt #20940, dated 06/05/78, for two packages 15cm. papers, two 150mm. funnels and two stoppers from A. Diagger & Company Laboratory Supplies & Chemicals. [¶] 3) Receipt dated 06/07/78, for 55 gallons white gas and 55 gallon barrel deposit, from Mowry Avenue Chevron, 5300 Mowry Avenue, Fremont, California, to Paul MAMOTO [sic] at 527 Viagrnd [sic] San Lenord [sic]. [¶] Affiant also observed SCHLIM search a canvas shoulder bag, which FLORES had in his possession at the time of his arrest, and remove 19 similar gram sized packages, consisting of the corner of plastic baggies, of suspected Phencyclidine and approximately one pound of suspected Marijuana from the shoulder bag. [¶] Affiant then directed Detective Sergeant A. CHAVARRIA and Detective Sergeant D. JONES, of the Alameda County Sheriff's Office Narcotics Unit to take the aforementioned key to the Thunderbird Motor Lodge, Room #223 and 'Freeze' Room #223 until a Search Warrant can be obtained, to prevent any possible accomplices from entering Room #223 and destroying or removing any evidence. [¶] Affiant submitted a small portion of the suspected Phehcyclidine [sic] seized from FLORES'S pocket and pack, to a Valtox Presumptive Test and it showed a positive reaction for Phencyclidine. Affiant also submitted a small portion of the suspected Marijuana to a Valtox Presumptive Test and it showed a positive reaction for Marijuana. [¶] Affiant knows from affiant's training and experience that: [¶] 1) Phencyclidine commonly appears as an off-white crystalline substance and is also commonly packaged for re-sale in gram sized packages. [¶] 2) Vacuum pumps are commonly used in the manufacture of Phencyclidine. [¶] 3) Papers, funnels and stoppers are commonly used in the manufacture of Phencyclidine. [¶] 4) White gas is commonly used in the final stages of the manufacture of Phencyclidine. [¶] 5) Drug and Narcotic traffickers frequently use phony names or

## I

### Scope of Review

■ While it is generally recognized that the findings of the trial court during a suppression hearing, whether express or implied, must be upheld on appeal if supported by substantial evidence (*People v. Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People v. Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; *People v. King* (1977) 72 Cal.App.3d 346, 349-350 [139 Cal.Rptr. 926]), it is equally well established that where the facts bearing upon the validity of the challenged search and seizure are undisputed—as here—the question becomes one of law for the reviewing court. (See *People v. Duren* (1973) 9 Cal.3d 218, 238, 239 [107 Cal.Rptr. 157, 507 P.2d 1365]; *People v. Superior Court (Henry)* (1974) 41 Cal.App.3d 636, 639 [116 Cal.Rptr. 24]; *People v. Superior Court (Mahle)* (1970) 3 Cal.App.3d 476, 488 [83 Cal.Rptr. 771].)

## II

### Search Incident to Arrest; Accelerated Booking Search

Relying on an established line of authority, the People renew their principal argument below that the warrantless search of the canvas shoulder bag was valid as being incident to a lawful arrest, and, alternatively, as an accelerated booking search. Defendant counters that the warrantless seizure of property cannot, in the absence of exigent circumstances, be justified as incident to arrest where such property is not immediately associated with the arrestee, but rather is in the exclusive control of the arresting officer thus preventing any danger of the arrestee's ability to seize a weapon or to destroy evidence. Defendant further

---

aliases. [¶] 6) Drug and Narcotic traffickers frequently deal drugs and narcotics from motel rooms. [¶] 7) Scales are commonly used by Phencyclidine dealers. [¶] 8) Parsley is commonly used as a means of smoking Phencyclidine. [¶] 9) Plastic baggies and corners of plastic baggies are commonly used to package Phencyclidine for re-sale. [¶] 10) Drugs and narcotic traffickers frequently use motel rooms as a location from which to sell drugs and narcotics as well as a location to store drugs and narcotics. [¶] Affiant requests night time service as officers are currently 'Freezing' Room 223 of the Thunderbird Motor Lodge and this Search Warrant will not be signed until it is after 10 p.m. and it is currently 11:26 p.m. [¶] WHEREFORE, affiant prays that a search warrant be issued, based upon the above facts, for the seizure of said property.

contends that the challenged search cannot be justified on the theory of an accelerated booking search once the subject property has been reduced to the exclusive control of the police. We consider such contentions in an order promoting convenience of discussion.

Prior to the advent of *United States* v. *Chadwick* (1976) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], as clarified in *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], Fourth Amendment compliance was deemed established whenever a search incident to a valid custodial arrest was limited to the arrestee's person and the area within his immediate control from which he might gain possession of a weapon or destroy evidence. (See *Chimel* v. *California* (1968) 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034].) Under federal standards, authorization for a full body search is provided merely by the fact of the lawful arrest "not only [as] an exception to the warrant requirement of the Fourth Amendment, but...[also as]...a 'reasonable search' under that Amendment." (*United States* v. *Robinson* (1973) 414 U.S. 218, 235 [38 L.Ed.2d 427, 441, 94 S.Ct. 467]; see also *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488].) ■ However, justification for such searches tested under independent state standards (Cal. Const., art. I, § 13) pivots upon whether probable cause exists for the officer to believe that the arrestee possessed a weapon or contraband. (See *People* v. *Maher* (1976) 17 Cal.3d 196 [130 Cal.Rptr. 508, 550 P.2d 1044]; *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].) The rationale underlying the latter holdings focuses upon the nature of the offense itself and the attendant necessity of police transport for jailhouse booking in order "...to provide for the safety of police personnel and other prisoners, to prevent the introduction of weapons and contraband into the jail, and to inventory the entering prisoner's property." (*People* v. *Maher, supra,* at p. 201; *People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606] [revd. on other grounds, 391 U.S. 470 (20 L.Ed.2d 750, 88 S.Ct. 1850.)]; *People* v. *Rogers* (1966) 241 Cal.App.2d 384, 389-390 [50 Cal.Rptr. 559].) And where the arrestee is validly subject to a search during a jailhouse booking process, he may also be subject to a "field" or accelerated booking search (*People* v. *Barajas* (1978) 81 Cal.App.3d 999, 1008-1009 [147 Cal.Rptr. 195]) since there is no "significantly greater intrusion into the sanctity of the person of the arrestee if the search is

conducted [earlier] in the field." (*People* v. *Longwill, supra,* at p. 948.)
■ Since the defendant's initial arrest was based on a "no-bail" felony warrant, the *Longwill-Brisendine-Simon* line of reasoning does not apply and a search of defendant's person contemporaneous with arrest may be lawfully undertaken. (*People* v. *Ross, supra,* 67 Cal.2d 64, 69-70; cf. *United States* v. *Santana* (1976) 427 U.S. 38, 43 [49 L.Ed.2d 300, 305-306, 96 S.Ct. 2406] [pockets]; *United States* v. *Edwards* (1974) 415 U.S. 800 [39 L.Ed.2d 771, 94 S.Ct. 1234] [clothing]; *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 835 [153 Cal.Rptr. 89] [keys]; *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 622-623 [106 Cal.Rptr. 461] [wallet].)

■ The generally accepted "search incident to arrest" rule has been interpreted to include a woman's purse as a normal extension of the person subject to search as an item "customarily carried by an arrested person... [and] within the area of her immediate control." (*People* v. *Belvin* (1969) 275 Cal.App.2d 955, 958 [80 Cal.Rptr. 382]; accord *People* v. *Edwards* (1971) 22 Cal.App.3d 598, 602 [99 Cal.Rptr. 516] [jacket on a chair within immediate proximity]; *People* v. *Superior Court (Manfredo)* (1971) 17 Cal.App.3d 195, 202 [94 Cal.Rptr. 643] [open shopping bag near defendant's bed]; *People* v. *Arvizu* (1970) 12 Cal.App.3d 726, 729-730 [90 Cal.Rptr. 895] [duffel bag at foot of defendant's bed].) The *Belvin* court reasoned that an arrestee's personal articles such as a purse, wallet or coat actually in use—though not necessarily on his person—at the moment of arrest "...serve as possible sources of concealed weapons and of evidentiary items... [and] normally accompany the arrested person on his removal to some other place. Their search thus serves the dual function of security and of legitimate investigation. We conclude that defendant's purse, apparently in use by her at the time of her arrest, legally amounted to an extension of her person and could be searched on her arrest. Whether the search of the purse took place before or after defendant's physical removal to another room we consider wholly fortuitous." (*Id.* at pp. 958-959.) Thus, under the "extension of the person" doctrine formulated in *Belvin,* the instant search is justified as incident to a lawful custodial arrest.

In *United States* v. *Chadwick, supra,* 433 U.S. 1 (involving the search of a 200-pound locked footlocker taken from a car trunk well after defendant's arrest and seizure of the car), the court invalidated the warrantless search upon traditional grounds of protectible Fourth

Amendment privacy expectations and the absence of any cognizable exigency. In distinguishing the lesser constitutional considerations presented under the so-called "automobile exception," the *Chadwick* majority reemphasized that the amendment "protects people, not places" from unreasonable government intrusions into their legitimate expectations of privacy (*id.* at p. 7 [53 L.Ed.2d at p. 546] which protection is extended to luggage intended as a repository for personal effects involving privacy expectations of a substantially greater magnitude (*id.* at p. 13 [53 L.Ed.2d at p. 549]). While rejecting the government's proferred justification under the "search incident to arrest" rule, the court nevertheless acknowledged the continued vitality of the rule sanctioning an attendant weapons or evidence search—independent of the existence of probable cause—reasoning that "[t]he potential dangers lurking in all custodial arrests make warrantless searches *of items within the 'immediate control' area* reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved." (*Id.* at pp. 14-15 [53 L.Ed.2d at p. 550]; italics added.) In so holding the court noted the substantive distinctions between a valid warrantless search within *Chimel's* permissible scope of "immediate control" area and an initial warrantless search "remote in time and place from the arrest [citations]...[where]...no exigency exists" concluding that "[o]nce law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (*Chadwick, supra,* at pp. 14-15 [53 L.Ed.2d at pp. 550-551]; italics added.)

The *Sanders* court subsequently invalidated a warrantless search of personal luggage (removed from the trunk of a taxi during a lawful stop and detention) once it was securely within the control of the police (*Arkansas v. Sanders, supra,* 442 U.S. 753). A similar line of reasoning was followed by the California Supreme Court in suppressing evidence obtained as the result of warrantless searches of personal *containers* (taken from automobile trunks during otherwise lawful seizures) then in the exclusive possession of the police. (See *People v. Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467] [closed metal boxes]; *People v. Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514] [zippered tote bag] [cert. den. (1979) 444 U.S. 887 (62 L.Ed.2d

117, 181 S.Ct. 100)].) Under such circumstances that court concluded that a warrantless search of closed personal effects could only be justified upon a showing of "probable cause" and "exigent circumstances." (*People* v. *Dalton, supra,* at p. 857.)

In *all* of the high court cases discussed, the ratio decidendi underscored 1) the greater degree of privacy attached to closed personal effects or repositories, 2) then within the exclusive control of the police, 3) resulting from trunk searches and 4) the absence of exigent circumstances justifying the warrantless searches. Unlike the case at bench, *none* of those searches involved the arrestee's person, or extension thereof, contemporaneous with the arrest. Here the personal shoulder bag, designed to perform essentially the same function as a purse, was "immediately associated" with the defendant at all relevant times, including the ensuing struggle, and its search was remote neither in time nor place. (See *United States* v. *Chadwick, supra,* 433 U.S. 1, 15 [53 L.Ed.2d 538, 550-551].)[5]

---

[5]We are of course mindful of the differing analysis expressed in a recent decision of this court unmentioned in the briefs. In *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811] (Div. 3), a warrantless search of a "lunchbox" was held violative of the constitutionally protected right of privacy under a theory of *Chimel-Chadwick* imposed strictures as amplified in lesser federal decisions (*id.* at p. 203 and fn. 2). In response to a radio call to investigate a reported public inebriate, officers detained the staggering defendant whom one of the officers thought he recognized. Having detected no odor of alcohol, the officer suspected that the defendant was under the influence of drugs; after placing the handcuffed defendant in the patrol car, a search of the lunchbox was conducted at the scene for "identification... [and] the possible intoxicant" resulting in the discovery of contraband. While rejecting the Attorney General's reliance on·*People* v. *Belvin, supra,* 275 Cal.App.2d 955, without discussion, the *Pace* court held that *Chadwick* and related authorities uniformly prohibited warrantless searches whenever "the police have the item in their exclusive control" (92 Cal.App.3d at p. 204), reasoning that the traditional justification for such incidental searches no longer obtains once the "container has been removed from the immediate control of the person arrested and there is, therefore, no longer any danger that he will seize a weapon or destroy evidence of a crime." (*Id.* at pp. 202-203.) As is apparent, we do not similarly construe *Chadwick* to impliedly repudiate the validity of a warrantless search otherwise incidental to and contemporaneous with a valid custodial arrest simply because the item has been physically removed from the arrestee's immediate control. Moreover, although the *Pace* court recognizes the continuing viability of the *Chimel* rule governing searches incident to arrest (*id.* at p. 207), it nevertheless fails to consider or discuss the permissible scope of searches of property *associated with the person* of the arrestee (or normal extensions) as distinguished from the "area 'within his immediate control'" (*Chimel* v. *California, supra,* 395 U.S. 752, 763 [23 L.Ed.2d 685, 694]; cf. *United States* v. *Berry* (7th Cir. 1977) 560 F.2d 861, 864, vacated on other grounds, 571 F.2d 2, cert. den. 439 U.S. 840 [58 L.Ed.2d 138, 99 S.Ct. 129]) and would—without more—routinely condemn otherwise valid accelerated and authorized booking searches. (See *People* v. *Longwill, supra,* 14 Cal.3d 943, 948; Pen. Code, §§ 1412, 4003.) In view of its overbroad analysis, we find the reasoning in *Pace* to be unpersuasive.

Moreover, the defendant's sudden act of lunging for the bag upon the officer's approach strongly supported an objectively reasonable belief that the bag contained either a weapon or contraband; thus exigent circumstances dictated an immediate search for a possible "dangerous instrumentality" rather than undertake the "foolhardy" risk in delaying the search until arrival at the station house. (*United States* v. *Chadwick, supra,* 433 U.S. 1, 15, fn. 9; see also *People* v. *Dalton, supra,* 24 Cal.3d 850, 857; but cf. *United States* v. *Schleis* (8th Cir. 1978) 582 F.2d 1166 [invalidating warrantless search of a *briefcase* during a later jailhouse search and lack of exigent circumstances].)

Accordingly, we conclude that the order granting suppression of the evidence discovered during the search of the shoulder bag constituted reversible error.

## III

### *Probable Cause for Issuance of Search Warrant*

In the related appeal, defendant attacks the validity of the search warrant contending that without including the fruits of the illegal search of the shoulder bag, the affidavit was factually insufficient to support the issuance of the warrant for the objects seized at the particular place designated. (See *Alexander* v. *Superior Court* (1973) 9 Cal.3d 387 [107 Cal.Rptr. 483, 508 P.2d 1131].) Since we have concluded that the initial search at the time of arrest was valid (pt. II), the contention becomes moot. Moreover, whether we review the challenged affidavit in its full, unexpurgated form or in its excised condition as did the trial court (cf. *People* v. *Hill* (1974) 12 Cal.3d 731, 759 [117 Cal.Rptr. 393, 528 P.2d 1] [revd. on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]), our independent review of the affidavit (see fn. 4 *ante*) discloses no constitutional defect.

■ It is of course the duty of the trial court to decide in the first instance whether the facts found in support of the warrant meet the constitutional test of reasonableness. (See *People* v. *Pellegrin* (1977) 78 Cal.App.3d 913, 917 [144 Cal.Rptr. 421].) Upon review, it becomes our duty to measure the facts as found against a similar standard. (See *People* v. *Lawler, supra,* 9 Cal.3d 156, 160.) In our view the affidavit as considered in support of the search warrant presents an ample factual basis that made it substantially probable that a quantity of con-

trolled substances (PCP) and related paraphernalia would be located in defendant's motel room. (See *People* v. *Cook* (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal.Rptr. 605, 583 P.2d 130].)

█ Defendant's companion challenge is premised upon a claimed absence of "good cause" justifying nighttime service. (See Pen. Code, § 1533; *People* v. *Watson* (1977) 75 Cal.App.3d 592, 598 [142 Cal.Rptr. 245].) █ While it is true that the mere assertion of suspected unlawful drug activities in the place to be searched is insufficient to justify night service (*id.* at pp. 598-600), the test to be applied is whether the affidavit *read as a whole* in a common sense manner reasonably supports a finding that such service will best serve the interests of justice. (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 35 [121 Cal.Rptr. 269].) And, "[A]bsent an abuse of discretion, the magistrate's finding of a reasonable necessity of nighttime service will not be disturbed on appeal. [Citations.]" (*Id.* at p. 35.)

█ Here the facts reveal that following the arrest of the defendant under circumstances strongly suggesting involvement in illicit drug trafficking, the police expeditiously sought to conduct an immediate search of a place typically used by traffickers, then under close surveillance to prevent removal of evidence by possible accomplices. Upon such facts we cannot say it was an abuse of discretion to authorize the requested nighttime service in lieu of maintaining an all-night vigil with its concomitant potential for a violent confrontation with possible accomplices. Moreover, where—as here—the room was found to be unoccupied, no one's right of privacy or other lawful interests could be, nor were, seriously implicated. (Cf. *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780, 786-787 [95 Cal.Rptr. 213].) We find no error as claimed.

We reverse the judgment in criminal No. 18751 for further proceedings not inconsistent with the views expressed herein; the judgment in criminal No. 19062 is affirmed.

Elkington, J., and Newsom, J., concurred.

A petition for a rehearing was denied January 18, 1980, and the petition of appellant Flores for a hearing by the Supreme Court was denied February 14, 1980.