[Crim. No. 31509. Second Dist., Div. Four. Apr. 12, 1978.]

In re JOHN C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOHN C., Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner and James K. Stoddard, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II, Roger W. Boren and Elizabeth A. Baron, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUPP, J.\***—John C., a minor, appeals from an order of the Superior Court of Los Angeles County sitting as a juvenile court adjudicating him a ward of the court and committing· him to the California Youth Authority. We reverse the order.

*Assigned by the Chairperson of the Judicial Council.

In an amended petition filed by the District Attorney in the Juvenile Court, it was alleged that appellant came within the provisions of section 602 of the Welfare and Institutions Code in that: (count I) on June 21, 1977, he wilfully and unlawfully had in his possession not more than one ounce of marijuana in violation of Health and Safety Code section 11357, subdivision (b), a misdemeanor; and (count II) on the same date he was willfully and unlawfully in possession of a controlled substance (PCP) in violation of Health and Safety Code section 11377, subdivision (a), a felony. Appellant denied the allegations of the amended petition. At the adjudication proceeding, after presentation of the petitioner's case, appellant moved to suppress evidence consisting of a hand-rolled marijuana cigarette and .02 grams of a powder containing phencyclidine (PCP). The motion was denied. The court found the allegations of the amended petition to be true, and further "[found] the offense to be a felony." Appellant was declared a ward of the court under Welfare and Institutions Code section 602, and was committed to the California Youth Authority for a maximum period of one year.

The only issue is whether the contraband evidence should have been suppressed. The following evidence was produced at the adjudication proceeding. At 8:30 or 9 p.m. on June 21, 1977, appellant was at the Del Amo Fashion Square Shopping Center in Torrance. There, Mr. Tully, a security officer employed by the owners of the shopping center, saw appellant talking to two girls. Tully previously had received two complaints from sales personnel at the shopping center that a person matching appellant's description was bothering shoppers and "appeared to be under the influence of something." Accordingly, Tully went up to appellant and talked to him. Appellant spoke rapidly and, for the most part, unintelligibly. He removed the dark glasses he was wearing and volunteered the remark, "I'm not loaded." Tully observed, however, that appellant's pupils were dilated "almost as much as they could be." Tully informed appellant of the complaints he had received, escorted him from the premises, and told him that if he returned that evening he would be arrested for trespassing. Ten or fifteen minutes later, appellant was back at the shopping center. Tully heard him talk loudly and saw him follow a young man who seemed to be trying to get away from him. Tully and a fellow security officer then arrested appellant for trespassing (Pen. Code, § 602, subd. (j)). As appellant started to walk away, Tully grabbed his right arm and pulled him back. When appellant began to struggle, the security officers handcuffed his hands behind his back.

Immediately upon arresting appellant, Tully contacted the Torrance police and requested that they transport appellant to the police station

"just to get him off the property, get him out of our hair." In his request, Tully stated: "We have one in custody for trespassing, refuses to leave the mall and possibly under the influence of narcotics." Two police officers arrived at the shopping center five minutes after receiving the call from Tully. As the officers drove up, they saw appellant, in handcuffs, reach toward the back of his waistband and remove an object therefrom, "palming" it between his hands. Tully yelled, "Hey, this guy's got something." One of the police officers bent appellant's head downward and asked him to drop what he had in his hands. When appellant refused to do so, the second officer, Rivera, fearing for his safety and that of his partner, pried appellant's hands apart and retrieved a small package of cigarette papers. Officer Rivera noticed that the package was "a little bit fatter than it should be," and that it contained a long object in addition to the cigarette papers. He looked inside the package and discovered a hand-rolled cigarette and a small square of tinfoil folded to make a flat packet. He did not open the packet.

Rivera testified that when he and his partner arrived at the shopping center, they did not know that the security officers had arrested appellant for trespassing; they knew only that they were there "in regards to a 647(f) subject." After the police officers discovered the cigarette and the tinfoil in the package taken from appellant, Tully told them what had happened at the shopping center before their arrival. The officers then arrested appellant for violation of Penal Code section 647, subdivision (f) (disorderly conduct caused by being under the influence of a drug in a public place),[1] and for violation of Health and Safety Code section 11357, subdivision (b) (unlawful possession of less than an ounce of marijuana). Appellant was transported to the police station. There, during the booking process, the police officers opened the tinfoil packet and discovered therein a white granular substance resembling PCP.[2] Appellant was booked for violation of Penal Code section 647, subdivision (f), Health and Safety Code section 11357, subdivision (b), and 11377, subdivision (a) (unlawful possession of a controlled substance, i.e., PCP).

---

[1]Penal Code section 647 provides in pertinent part:
"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:
" . . . . . . . . . . . . . . . .
"(f) Who is found in any public place under the influence of . . . any drug . . . in such a condition that he is unable to exercise care for his own safety or the safety of others, or by reason of his being under the influence of . . . any drug . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."

[2]This substance later was analyzed and was found to contain PCP. The cigarette in the package taken from appellant at the shopping center also was analyzed; it was found to contain marijuana.

Earlier, at the shopping center, the police officers decided to drop the trespass charge because they felt they had other grounds to remove appellant from the premises.

On this appeal, appellant contends that the marijuana cigarette and the PCP should have been suppressed as evidence because the search leading to their discovery was unlawful. The argument has three branches which require discussion: (1) whether the officers had the right to remove the package of cigarette papers from appellant's hands at the scene of the arrest, (2) whether the officers were justified in looking inside the package at the scene, at which time the marijuana cigarette was observed, and (3) whether the discovery of the PCP in the course of the booking search was justified. Our answers are yes, no, and no.

Specifically, appellant argues that the search at the scene cannot be sustained as incident to his arrest because he was not arrested by the police officers until after their search of the package of cigarette papers revealed the contraband therein. This argument overlooks the fact that when the officers arrived at the shopping center, appellant was in custody pursuant to a valid citizen's arrest for trespass effected by Tully. (See Pen. Code, §§ 834, 837, subd. 1, 602, subd. (j); *People* v. *Johnson* (1969) 271 Cal.App.2d 51, 53 [76 Cal.Rptr. 201].) At any rate, since the ground for the removal of the package from appellant's hands was the officers' fear for their safety, the sequence of the search and the arrest is not controlling. (*People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 204 [101 Cal.Rptr. 837, 496 P.2d 1205].)

In the present case, the officers saw appellant reach into the back of his waistband and secrete in his hands an object which he had retrieved; at that point, Tully shouted, "Hey, this guy's got something"; appellant refused to drop the object in his hands when asked to do so by the police officers; fearing for his safety and that of his partner, Officer Rivera then pried appellant's hands apart and removed therefrom the package of cigarette papers. We conclude that the foregoing circumstances justified examining the contents of appellant's hands to ascertain that they contained no weapon.[3]

---

[3]Contrary to appellant's assertion, the facts summarized show that the officers' concern for their safety was based upon more than a "furtive gesture," which alone does not furnish probable cause to search. (*People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 827-828 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) Additional circumstances observed by the officers (appellant's palming of an object removed from his waistband and his refusal to drop the object upon request) lent "guilty significance" to appellant's

■ With regard to finding the marijuana cigarette in the package, upon removing the object from appellant's hands and seeing that it was not a weapon, but a package of cigarette papers, Rivera no longer had reason to fear for the officers' safety; indeed he so testified. His search of the interior of the package thus exceeded the objective which justified the initial search (see *Amacher* v. *Superior Court* (1969) 1 Cal.App.3d 150, 154 [81 Cal.Rptr. 558]) and was, to that extent, unlawful. The marijuana cigarette found inside the package should have been suppressed as evidence.

■ We next consider finding the PCP at the "booking search." When Rivera looked inside the package, he also found a tinfoil packet. He did not open the packet when he first discovered it at the shopping center. It was opened, and the PCP concealed within was discovered, during a booking search of appellant at the police station following his arrest on charges of possession of marijuana (Health & Saf. Code, § 11357, subd. (b)) and being under the influence of drugs (Pen. Code, § 647, subd. (f)).

■ When a person has been lawfully arrested on a criminal charge and undergoes the process of "booking" at a police station prior to being held in jail, it is reasonable to conduct a search of his person and effects for the purpose of preventing the introduction of weapons or contraband into the jail. (*People* v. *Superior Court (Simon) supra,* 7 Cal.3d at p. 208; *People* v. *Munsey* (1971) 18 Cal.App.3d 440, 448 [95 Cal.Rptr. 811]; *People* v. *Rogers* (1966) 241 Cal.App.2d 384, 389-390 [50 Cal.Rptr. 559].) The reasonableness of the search of the tinfoil packet which revealed the PCP depends, therefore, upon the legality of appellant's arrest. (*People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 462 [67 Cal.Rptr. 826].)

■ Appellant's arrest for possession of marijuana was based upon the cigarette discovered by Officer Rivera during his unlawful search of the inside of the package of cigarette papers. "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all." (*Silverthorne Lumber Co.* v. *United States* (1920) 251

---

furtive gesture of reaching into his waistband. (See *Gallik* v. *Superior Court* (1971) 5 Cal.3d 855, 859 [97 Cal.Rptr. 693, 489 P.2d 573]; *People* v. *Orr* (1972) 26 Cal.App.3d 849, 858-859 [103 Cal.Rptr. 266].)

U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426]. See also *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166, 169 [89 Cal.Rptr. 731, 474 P.2d 683].) Accordingly, the cigarette found inside the package could not furnish reasonable cause to arrest appellant for possession of marijuana. Even if it could, a defendant may not be booked for possession of less than an ounce of marijuana under the express language of Health and Safety Code section 11357, subdivision (b),[4] in the absence of circumstances not shown to exist here.

Appellant was also arrested and booked on a charge of violation of Penal Code section 647, subdivision (f). He contends that such arrest was unsupported by reasonable cause. Since appellant was arrested without a warrant, the burden rested on the petitioner to show proper justification for the arrest. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) ██ The record herein contains no evidence that Officer Rivera observed any conduct on appellant's part which could have led him reasonably to conclude that appellant was under the influence of a drug to such an extent that he was unable to exercise care for his own safety or that of others, or that, by reason of being under the influence of a drug, he was interfering with or obstructing the free use of any public way.[5] (Pen. Code, § 647, subd. (f).) Respondent contends that appellant was instrumental in preventing the prosecution from producing evidence of reasonable cause for the arrest, and therefore he cannot now complain that such evidence is lacking. (See *People* v. *Benjamin* (1957) 154 Cal.App.2d 164, 168 [315 P.2d 896].) We do not so view the record. It shows that on two occasions the deputy district attorney asked Officer Rivera to state the factors upon which he based his arrest of appellant for violation of section 647, subdivision (f).[6] On each occasion, appellant's

---

[4]The last sentence of section 11357, subdivision (b), reads: "In any case in which a person is arrested for a violation of this subdivision and does not demand to be taken before a magistrate, such person shall be released by the arresting officer upon presentation of satisfactory evidence of identity and giving his written promise to appear in court, as provided in Section 853.6 of the Penal Code, and shall not be subjected to booking."

[5]A police officer is without authority to arrest a minor, without a warrant, for a misdemeanor not committed in the officer's presence. (Welf. & Inst. Code, § 625.1, subd. (a); *In re Thierry S.* (1977) 19 Cal.3d 727, 744-745 [139 Cal.Rptr. 708, 566 P.2d 610].) For this reason, although Tully was a citizen-informant whose reliability required no corroboration (see *People* v. *Barrett* (1969) 2 Cal.App.3d 142, 147 [82 Cal.Rptr. 424]), information which he may have conveyed to the police officers concerning his observations of appellant at the shopping center prior to the officers' arrival could not furnish reasonable cause for their warrantless arrest of appellant on the misdemeanor charge of violation of Penal Code section 647, subdivision (f).

[6]Rivera was the only arresting officer who testified at the adjudication proceeding.

attorney objected to the question. While the court did not rule on the first objection, it overruled the second. Thereafter, the deputy district attorney chose to withdraw the question to which the objection had been directed, and did not pursue the inquiry further.[7] Under these circumstances it cannot be said that appellant was responsible for the prosecution's failure to establish reasonable cause for appellant's arrest for violation of section 647, subdivision (f).

Since the police officers did not have reasonable cause to arrest or book appellant for possession of marijuana and petitioner did not show reasonable cause to arrest for violation of Penal Code section 647, subdivision (f), there was no lawful arrest to justify the booking search of appellant during which the PCP was discovered. It follows that the PCP, as well as the marijuana cigarette, should have been suppressed as evidence.

The order adjudicating appellant a ward of the court and committing him to the California Youth Authority is reversed.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied May 8, 1978. Respondent's petition for a hearing by the Supreme Court was denied June 9, 1978. Clark, J., was of the opinion that the petition should be granted.

---

[7] In this regard, the record shows the following:

"Q. [by deputy district attorney] what was he [appellant] arrested for?

"A. He was arrested for 647(f) of the Penal Code.

"Q. All right. Now, let's go back and find out what you based your arrest on, Officer.

"MR. BISNOW [appellant's attorney]: Again renew my objection; he's not being prosecuted for 647(f).

"THE COURT: Well, that is interesting. . . . Let me ask a couple questions. . . .

" . . . . . . . . . . . .

"Q. [by the deputy district attorney] At the time that you saw the minor, you stated you placed him under arrest for 647(f)?

"A. Yes. This was after we had spoken to him a few times.

"Q. Tell me what factors this arrest was based on.

"A. We'd arrest [sic] him under the section of 647(f) P.C.

"MR. BISNOW: Again object, because this is irrelevant, because it's subsequent to the search.

"THE COURT: Overruled. . . . I understand that this arrest isn't going to justify a search that took place beforehand. . . . I don't know what probative value it may have. Maybe there's some more evidence coming in.

"MS. JAVAN [deputy district attorney]: No, there is not, your Honor. I'll proceed on another question.

"THE COURT: Well, I've overruled the objection, anyway. But if you wish to withdraw it—

"MS. JAVAN: I'll withdraw it, your Honor."