[Civ. No. 5233. Fifth Dist. June 20, 1980.]

In re WILLIAM G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM G., Defendant and Appellant.

 

**COUNSEL**

William D. Palmer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and James Ching, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**FREDMAN, J.*** —Seventeen-year-old William G. appeals from an assumption of jurisdiction by the juvenile court of his county of residence. The court found true a supplemental petition alleging violation of Health and Safety Code section 11377, subdivision (a), possession of LSD, and Penal Code section 647, subdivision (f), being under the influence of intoxicating liquor in a public place.

William attacks the finding of the LSD possession charge, claiming violation of his Fourth Amendment rights in a postarrest booking search. He also asserts that the alcohol charge is not supported by substantial evidence.

We find the minor's contentions to be unsound, and affirm the juvenile court's substantive findings. However, we reverse the orders made below for procedural error in denying William's trial attorney his right to argue after conclusion of the testimony.

The facts are not complicated. William was arrested by a Kings County deputy sheriff around midnight on September 22, 1979, after he observed the minor walking precariously along a public road in the vicinity of a large party. The officer, at the jurisdictional hearing,

---

*Assigned by the Chairperson of the Judicial Council.

described the minor's condition at the time of arrest: "staggering very badly, very unsteady on his feet, his speech was slurred, eyes bloodshot, and there was a strong odor of alcoholic beverage on his person." William became sick twice prior to conclusion of the booking process.

Transported to the jail for booking, William was uncooperative. The arresting officer helped in the process by removing articles from the minor's pockets. Included was a small plastic vial found in the left front pocket. Visible through the plastic were several rolled up bills of paper money and located in the bottom of the vial was a rolled up plastic baggie. The deputy removed the money and handed it to the jailer, who counted it. He then removed the baggie, uncoiled it, and discovered a small square piece of paper.

At the hearing, the arresting officer testified that he was familiar with paper of this type, that similar paper squares he had seen had turned out to be permeated with LSD. That was his reason for seizing the paper and causing it to be examined. Later chemical analysis confirmed the suspicions of the deputy. The illegal drug LSD was present in the paper found in the baggie in the minor's possession.

We evaluate the issues, each in turn.

### THE BOOKING SEARCH

Appellant relies solely on *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811] to support his contention that obtaining a search warrant was a prerequisite to an inspection of the vial and its contents. It is agreed that no search warrant was sought, procured or served.

*Pace, supra,* held that a warrantless search of a container (a lunch box), which was removed from the defendant incident to his arrest for being under the influence of PCP or some other drug, was unlawful since the container was in the exclusive control of the police and no exigent circumstances were present. The search was conducted after the defendant had been arrested, handcuffed and placed in the back of the patrol car. The officer stated he opened the lunch box looking for identification or the possible source of intoxication. The lunch box contained defendant's driver's license, PCP, marijuana and cocaine.

This court joins a rapidly lengthening parade of appellate decisions in which proposed application of *Pace* dicta to jailhouse entry searches has

been distinguished, deplored and decried. (See *People* v. *Harris* (1980) 105 Cal.App.3d 204, 217 [164 Cal.Rptr. 296]; *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 87 [164 Cal.Rptr. 163]; *People* v. *Flores* (1979) 100 Cal.App.3d 221, 232 [160 Cal.Rptr. 839].) We avoid expounding on the rationale of these exegetic opinions, limiting our refutation only to the extent that *Pace* purports to touch upon the conclusions reached here.

We therefore hold that booking searches of arrested persons and their pocketed belongings may lawfully be conducted without a search warrant as an incident to entry to jail. The search here, falling squarely within the category of booking searches, is exempt from the Fourth Amendment protection claimed by the minor.

## The Public Intoxication Charge

Appellant contends that the record contains ". . . no indication that he was unable to take care of himself" as is required to sustain a section 647, subdivision (f), conviction. However, the arresting officer's testimony as to the appellant's condition is itself some evidence of this element. (See *In re John C.* (1978) 80 Cal.App.3d 814, 821 [145 Cal. Rptr. 228].) He testified that appellant was "staggering very badly, very unsteady on his feet, his speech was slurred, eyes bloodshot, and there was a strong odor of alcoholic beverage on his person." This evidence was countered by two friends of the minor who were with him just prior to the arrest and who swore that William had been drinking, but was not staggering, slurring his speech, or falling down. The observations by the officer alone were sufficient to warrant placing appellant under arrest for violation of section 647, subdivision (f). (See *People* v. *Longwill* (1975) 14 Cal.3d 943, 945 [123 Cal.Rptr. 297, 538 P.2d 753].) They were also grounds for the officer to conclude that appellant was unable to exercise care for his own safety. (*People* v. *Murrietta* (1967) 251 Cal.App.2d 1002, 1004-1005 [60 Cal.Rptr. 56]; see also, *People* v. *Goldberg* (1969) 2 Cal.App.3d 30, 34 [82 Cal.Rptr. 314].) Likewise the juvenile judge could reasonably infer the same conclusion from all of the surrounding circumstances.

Taking into consideration the whole record at the hearing, there was substantial evidence to convict appellant of violation of Penal Code section 647, subdivision (f). (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738].)

■ Appellant also claims that he should have been placed in civil protective custody under Penal Code section 647, subdivision (ff). However, this issue was not presented as a defense at the hearing. Such was appellant's burden, and the defense may not be raised initially on appeal. (*People* v. *Ambellas* (1978) 85 Cal.App.3d Supp. 24, 32-33 [149 Cal.Rptr. 680].)

### THE RIGHT TO ARGUE

In the closing moments of the jurisdictional hearing, the following colloquy between court and the minor's counsel occurred: "THE COURT: . . . Call your next witness.

"MR. HATHERLEY [minor's counsel]: No further witnesses, Your Honor.

"THE COURT: I will find the allegation to be true on both counts beyond a reasonable doubt—

"MR. HATHERLEY: If it pleases the Court,—

"THE COURT: I've already made my ruling. I made a ruling. Do you want the minor detained?

"MR. SMILEY [probation officer]: Yes, sir, Your Honor.

"THE COURT: When do you want the disposition?

"MR. SMILEY: October the 29th at 4:00 p.m.

"THE COURT: The minor's matter is set for disposition hearing on October the 29th at 4:00 o'clock.

"MR. SMILEY: Thank you."

We have reviewed what transpired in the light of *In re William F.* (1974) 11 Cal.3d 249 [113 Cal.Rptr. 170, 520 P.2d 986], and *People* v. *Dougherty* (1980) 102 Cal.App.3d 270 [162 Cal.Rptr. 277].

In *In re William F., supra,* the Supreme Court reversed a jurisdictional finding by a juvenile court where the minor's counsel was denied

an opportunity to argue the merits of his client's case upon conclusion of the testimony. Counsel had clearly requested a chance to express his views on the evidence. The trial court denied this request and proceeded to find that it had jurisdiction over the minor.

The Supreme Court held that assertion of the right to present a closing argument by counsel at a jurisdictional hearing must be honored if fundamental fairness in the fact finding process is to be accorded to a juvenile. (*In re William F., supra*, 11 Cal.3d at p. 255.) Going further, the court determined that such denial was prejudice per se and required reversal of the jurisdictional order of the juvenile court. (*Id.* at pp. 255-256.)

In *Dougherty, supra*, this court recently reversed a criminal conviction where the trial court, sitting without a jury, pronounced its finding of guilt without either inviting argument from counsel, or obtaining an express waiver of argument. This court held: "Denial of the opportunity to make a closing argument for the defense in a criminal case *prior* to the determination of guilt or innocence is a deprivation of an accused's basic right to present a defense. As indicated, this is an error which can be avoided but it cannot be cured save and except by reversal and retrial. As it would be futile for us to measure prejudice on the basis of an argument which counsel never had the opportunity to present (*In re William F., supra*, 11 Cal.3d 249, 256; *Herring* v. *New York, supra*, 422 U.S. at pp. 864-865 [45 L.Ed.2d at pp. 601-602]), the judgment is reversed." (*People* v. *Dougherty, supra*, 102 Cal.App.3d at 278.) (Italics in original.)

The People urge that we either (1) modify our decision in *Dougherty* even before its ink is dry, or (2) hold that it is prospective in effect only, thereby preserving the orders of the juvenile court in this case.[1]

We eschew the opportunity to meddle with our prior ruling, if only on the basis of stare decisis. Likewise, we refuse to quaff the heady wine of constitutional retroactivity proffered by People's counsel. Instead, we revert to an analysis of the basic facts of the case at bench.

█ It is clear that the minor's attorney attempted to interject his thoughts into the court's pronouncement of its finding. He was summa-

---

[1]The jurisdictional hearing was held on October 17, 1979; *Dougherty* became final on April 21, 1980.

rily enjoined from further protest, and thus, the record is silent on the precise nature of counsel's polite interruption. We will never be sure of his purpose and are thus relegated to speculation. From the timing of the statement and its prefatory nature, and based on experience and common practice, we interpret the interjection as the initial stage of counsel's argument on the merits of his client's case. As such, we deal with *William F.* error and not *Dougherty* error. Having so decided, we sidestep reexamination of *Dougherty* or determination of its retroactivity.

Finding *William F.* error, we reluctantly reverse the otherwise error free finding and remand the case for a new jurisdictional hearing.

We are ever mindful of the increasingly heavy calendars imposed on juvenile courts and the infliction of seemingly unending litanic burdens on those courts by the Legislature and appellate tribunals. These additional burdens must be carefully measured against the right of each minor, such as William G., to obtain a basically fair hearing. Not only must the hearing be procedurally sound, it must *appear* to both juvenile and parents that they have been afforded a dignified and patient examination of their cause. To do less is to mock the respect for authority which the juvenile court is entrusted to instill in those minors passing before it.

When balancing expediency against fundamental rights such as those at stake here, the scales must tip in favor of that modicum of extra care required to afford the minor both the appearance and actuality of a full and fair opportunity to be heard.

The jurisdictional and dispositional orders are reversed and the matter is remanded for a new hearing in juvenile court.

Hopper, Acting P. J., and Hanson (P. D.), J., concurred.