Filed 9/3/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LASHUN CARCAMO et al., | B296666 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. TC028076 |
| v. | |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Reversed and remanded.

Law Office of Erik C. Alberts and Erik C. Alberts for Plaintiffs and Appellants.

Harold G. Becks & Associates, Harold G. Becks and Valorie Ferrouillet for Defendants and Respondents.

——————————

Some 58 years ago, our Supreme Court held California had "*adopted a general scheme for the regulation of the criminal aspects of being intoxicated in a public place.*" (*In re Koehne* (1963) 59 Cal.2d 646, 648 (*Koehne*).)  That general scheme is encompassed in Penal Code section 647, subdivision (f) (section 647(f)).  Stating, "Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned," the high court invalidated a city ordinance that prohibited being or appearing " '*in a state of drunkenness or intoxication*' " " '*in any public place.*' " (*Koehne,* at pp. 647–648.)

Notwithstanding decades of clear Supreme Court authority, as of at least February 2014 the City of Carson had on its books a "public intoxication" ordinance that purports to criminalize conduct that is not unlawful under the Penal Code.  Los Angeles County Sheriff's Department deputies arrested plaintiffs LaShun Carcamo, Anthony January, and Kirby Hales for public intoxication under that ordinance, Carson Municipal Code section 4201 (C.M.C. section 4201).  The arrestees spent a night and the better part of the next day in jail.  They were never charged.

Plaintiffs sued the sheriff's department and Deputy Larry Billoups for wrongful arrest.  The trial court declined to address the preemption issue, instructing the jury that, if deputies saw plaintiffs drunk in public, they had reasonable cause to arrest them under the Carson ordinance.  The jury found in defendants' favor and plaintiffs appeal.  We reverse.

## BACKGROUND

Plaintiffs filed a third amended complaint on March 22, 2016, alleging false imprisonment and battery.[1]  They dismissed their battery cause of action at trial.

On the night of February 15, 2014, Carcamo and January, who were dating at the time, had dinner at the Olive Garden in Carson.  Both testified they had nothing to drink that night.  Their receipt showed a free sample of wine but no alcoholic drink order.

In February 2014 Hales and his half-brother Kelton Jolly were living at their mother's house in Carson.  Jolly and January were longtime friends.  On February 15, Hales and Jolly had gone to a car show and then to visit a friend.  When they got back to the house, Hales parked his van at the curb outside; Jolly was in the passenger seat.  They had not been drinking and there was no alcohol or food in the van.  Hales was taking medication to stabilize his heart for surgery, and alcohol would "throw everything off."

January had called Jolly to say he was coming over, and Hales and Jolly waited for him in the van for 10 or 15 minutes.  The Jolly home was about five minutes away from the Olive Garden; January drove there so he could stop in and say hello to Hales and Jolly.  January parked across the street and walked to the passenger side of the van to talk.  Carcamo stayed in the

---

[1]     Plaintiffs have not included any of the versions of the complaint in the appellate record.  We use the term "false arrest," as false arrest and false imprisonment are not separate torts; false arrest is one way of committing a false imprisonment.  (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752, fn. 3.)

car. January stood upright talking to Jolly. According to Jolly, January did not smell of liquor or seem intoxicated in any way.

After January and Jolly had been talking for about five or 10 minutes, a patrol car pulled up behind the van with its lights flashing. Two deputies jumped out. They told January to step away from the van. The deputies pulled him back toward the patrol car.

Hales started to get out of the van. One of the deputies told him to shut the door, then to exit slowly with his hands over his head and to step backwards toward the patrol car. Hales complied, and the deputy handcuffed him and put him in the back of the patrol car. No one asked him if he had been drinking.

The deputies pulled Jolly out of the van, took him to the patrol car, frisked and cuffed him, and put him in the back of the patrol car. They never asked him if he had been drinking that night. Jolly gave the deputies a false name, but they ran his prints and found his outstanding warrants, one of which was for failure to appear in a DUI case.

The deputy later identified as Billoups said they had been getting calls that someone had been breaking into vans in the area. January explained they were just talking and asked, " 'Why are you harassing us?' " Billoups asked January if he had been drinking. January said no. Billoups asked his partner, Chad Holland, to take January back to the patrol car. Holland never asked January if he had been drinking.

When Carcamo saw deputies taking January to the patrol car, she got out of January's car, locked it, and walked across the street. The deputies told her to stop and she stood behind the van. Billoups asked Carcamo if she had been drinking and she said no. Billoups told her he didn't believe her. A female

deputy arrived and patted Carcamo down, emptied her pockets, handcuffed her, and put her in a patrol car.

Deputies took Carcamo, Hales, January, and Jolly to the sheriff's station. Carcamo, Hales, and January were released the next evening around 7:00 p.m.[2] Hales felt weak and noticed a little pain because he had not been able to take his heart medication.

Called by plaintiffs as a witness, Billoups testified he had arrested Carcamo and Hales, and Holland had arrested January and Jolly. Billoups had been with the sheriff's department for eight years, and he was Holland's training officer at the time. Billoups made the call that Carcamo, Hales, and January were drunk in public, and that was the only reason for their arrests.

Billoups had been briefed that night on burglaries in the area. Around 11:05 p.m. he saw Hales's van parked on the street with someone leaning his torso inside the passenger window. Billoups turned on his lights and stopped his patrol car behind the van. He approached the driver's side and told Hales and Jolly to show him their hands, because Hales was opening the car door. They complied, while Holland "contact[ed]" January on the passenger side.

Billoups testified he could smell alcohol on Hales's breath, and his eyes were bloodshot and watery. An open beer can was on the front center console. Billoups didn't collect the beer can because he didn't see anyone drinking from it. But he told Holland he'd seen it.

---

[2] Jolly stayed in custody for 18 days to serve time on his warrants.

Billoups asked Hales if he'd been drinking and Hales answered yes, he was sitting there drinking and eating with Jolly. Hales was slurring his words. When Holland came back from putting January in the patrol car, Billoups ordered Hales out of the van to investigate possible intoxication in public. He put Hales's hands behind his back, and noticed he was walking "slightly . . . off balance." Holland patted Hales down and put him in the back seat of the patrol car.

Billoups saw Carcamo "swaying" as she got out of the car parked on the other side of the street. She walked across the street to the sidewalk behind the patrol car. Carcamo knelt on the sidewalk and rested her back against the brick wall. Billoups twice asked her if he could help her and she said no. From three feet away, he could smell alcohol on her breath. He asked her to stand up and put her hands on the hood. Billoups asked Carcamo if she had been drinking and she answered she had had a few beers or a few drinks with her boyfriend at dinner. Billoups decided to arrest Carcamo and waited for a female deputy to arrive and pat her down.

Billoups testified Carcamo was not a danger to herself or others, she was not blocking any public way, and she did not obstruct traffic when she crossed the street. Billoups acknowledged those were the elements for a violation of section 647(f), but he didn't arrest plaintiffs for violating the Penal Code; he arrested them for violating the Carson ordinance. A violation of C.M.C. section 4201 required only that a person be intoxicated in public in the City of Carson. Sobriety tests were required for an arrest for driving under the influence, but not for being intoxicated in public.

Billoups's partner, Holland, likewise testified plaintiffs were arrested for violating C.M.C. section 4201. He explained that, while section 647(f) referred to being unable to care for yourself, C.M.C. section 4201 was a "lighter range. Anyone who is intoxicated in public." Holland testified none of the plaintiffs was belligerent; they were just intoxicated, and "under [the] Carson Municipal Code, if you're intoxicated and you're displaying the objective symptoms of being intoxicated, it's a crime." The incident report he prepared back at the station stated all three plaintiffs were arrested for "drunk in public" under C.M.C. section 4201.

Clarence Chapman testified as an expert in police policy, training, tactics, and procedures. The department did "pretty intense" training on intoxication. C.M.C. section 4201 included being drunk in public in a vehicle. To violate section 647(f) one would have to be "falling down drunk" and ready "to walk out into traffic" or "fall off the roof," and need "to go to jail for your own good." A different level was required for C.M.C. section 4201, which prohibited being outside in an intoxicated condition.

After reading the incident report, Chapman opined the deputies' initial contact was reasonable and justified under the department's policy and training, because they were aware of vehicle burglaries in the neighborhood and saw behavior consistent with burglarizing the van. Anything in plain sight the deputies then observed that "approximate[d]" another crime allowed them to proceed to the next step. Here, the deputies saw objective symptoms of intoxication in individuals on a public street and in a car, and under C.M.C. section 4201 that was a violation of the law. They could proceed to ask the individuals to get out of the car and to ask questions, and—if they had

7

a reasonable suspicion of a violation—they could arrest the individuals.  No sobriety test or breath or blood tests were required under C.M.C. section 4201.  The deputies' behavior was reasonable under department policy.

When recalled to the stand, Billoups testified he had been trained on the drunk-in-public ordinance, which he had enforced before, and on intoxication in general.  January's posture—leaning into the van—was consistent with the burglaries Billoups had learned about in briefing.  When he went to the driver's side, he could see Hayes was flushed, his eyes were red, and his breath smelled of alcohol.  He had reviewed and approved Holland's incident report, including the notation that plaintiffs were arrested for "drunk in public" under C.M.C. section 4201.

At the conclusion of their case in chief, plaintiffs moved for a directed verdict, arguing section 647(f) preempted C.M.C. section 4201 and, therefore, the Carson ordinance could not serve as reasonable cause to arrest.  Their counsel emphasized Billoups's testimony had made clear he arrested plaintiffs for violating the Carson ordinance, not the Penal Code.  The court responded, "[W]hat it sounds like you are saying is, even if that was the basis for the arrest, that's not the basis because you believe the Penal Code preempted that charge."  Counsel confirmed that was indeed plaintiffs' argument.

The court said,

> "That would be more persuasive if it was a criminal case, but this is a civil case.  Meaning, if an officer believed that there was a crime based on the statutory violation—in this instance, the Carson Code municipal violation —even if the court is persuaded that criminally

they could not be prosecuted for that particular charge but for public intoxication based on Penal Code 647(f), the officer acted in good faith based on the belief that the Carson Municipal Code had been violated."

The court then referred to search warrants and *United States v. Leon* (1984) 468 U.S. 897. After hearing from defense counsel, the court stated,

"Directed verdict is denied because the Carson Municipal Code is still valid. It is still in the books. And, basically, the only contested issue in this case is whether or not Deputy Billoups had probable cause to arrest these plaintiffs based on that particular violation of the Carson City Municipal Code."

Plaintiffs submitted 12 proposed special jury instructions. The record on appeal does not include those requested instructions. From the reporter's transcript, it appears one of those requests was that the court give the jurors CALCRIM No. 2966, setting forth the elements of a violation of section 647(f). The court repeated, "[T]he only issue in this case is whether or not the deputy had probable cause to arrest based on the Carson Municipal Code. So why would I allow the Penal Code? Why would I allow this particular charge to come in when this is not the charge that the plaintiffs were arrested for?" The court refused to give any of plaintiffs' 12 special instructions.

The court gave the jury a special verdict form. The jury answered "yes" to these questions: "Did Deputy Larry Billoups arrest [plaintiffs] without a warrant?" and "Did Deputy Billoups observe each of the Plaintiffs drunk in public in violation of

9

Carson Municipal Code [s]ection 4201 that, if proved, would constitute reasonable cause to believe each of the Plaintiffs had committed a crime in Deputy Billoups's presence?" The court entered judgment in favor of the sheriff's department and Deputy Billoups.

Plaintiffs filed a timely appeal from the judgment. After oral argument, we ordered the parties to submit letter briefs under Government Code section 68081, addressing whether section 647(f)'s preemption of C.M.C. section 4201 meant the deputies did not have probable cause to arrest plaintiffs under *People v. McNeil* (2002) 96 Cal.App.4th 1302.

## DISCUSSION

1. ***Because section 647(f) has preempted C.M.C. section 4201, the trial court erroneously instructed the jury that a violation of the Carson ordinance, if proved, would establish reasonable cause to arrest***

As the trial court instructed the jury, the elements of the tort of false arrest are: defendant arrested plaintiffs without a warrant, plaintiffs were harmed, and defendant's conduct was a substantial factor in causing the harm. (*City of Newport Beach v. Sasse* (1970) 9 Cal.App.3d 803, 810; CACI No. 1401.) If plaintiffs prove those elements, defendant has the burden of persuasion to prove the arrest was justified. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1044 (*Gillan*).) As the court also instructed the jury, the arrest is justified if defendant had reasonable or probable cause to believe that each plaintiff committed a crime in his presence. (*Ibid*.; CACI No. 1402.) The standard is objective, based on the information known to the arresting officer: "The arresting officer's actual motivations

10

or beliefs should play no role . . . ." (*Gillan,* at p. 1045; *Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1018 (*Levin*).)

The court gave the jury the following instruction regarding Billoups's asserted justification for the arrest: "Deputy Larry Billoups claims the arrest was not wrongful because he had the authority to arrest plaintiffs La[S]hun Carcamo, Anthony January, and Kirby Hales without a warrant. If Deputy Billoups proves that being drunk in public, in violation of Carson Municipal Code section 4201, would establish that Deputy Billoups had reasonable cause to believe that each of the plaintiffs had committed a crime in his presence, then Deputy Billoups had the authority to arrest the plaintiffs without a warrant."

Plaintiffs contend the instruction misstates the law because section 647(f) preempted C.M.C. section 4201. "We review de novo whether a challenged instruction correctly states the law." (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 298 (*Bowman*).) For the reasons that follow, we agree the instruction was erroneous.

Carson Municipal Code section 4201 states: "It shall be unlawful for any intoxicated person, or any person in an intoxicated condition, willfully to appear, remain or be in or on any public highway, street, alley, way, park, playground or public place in the incorporated territory of the City of Carson, whether such person is or is not in or upon any automobile, street or interurban car, vehicle or conveyance." Section 647(f) of the California Penal Code states that anyone "found in any public place under the influence of intoxicating liquor . . . in a condition that they are unable to exercise care for their own safety or the safety of others, or by reason of being under the

11

influence of intoxicating liquor . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way" is guilty of disorderly conduct.  The violation of the city ordinance and the violation of section 647(f) are both misdemeanors. (*People v. Orozco* (1968) 266 Cal.App.2d 507, 515, fn. 3.)

In enacting section 647(f), California adopted a general scheme for the regulation of the criminal aspects of being intoxicated in a public place, and local legislation has no control over what state legislation covers.  (*Koehne, supra*, 59 Cal.2d at pp. 648–649 [Los Angeles ordinance that prohibited "be[ing] or appear[ing] in a state of drunkenness or intoxication" in any public place was "in conflict with the state law" and therefore void]; see also *In re Zorn* (1963) 59 Cal.2d 650, 651–652 (*Zorn*) [same]; *People v. Lopez* (1963) 59 Cal.2d 653–654 (*Lopez*) [affirming dismissal of misdemeanor prosecution under Pomona ordinance that punished "appear[ing] at or" being "in any public place" "in a state of drunkenness or intoxication"].)  As the Legislature intended to preempt the field, "a city ordinance attempting to make certain acts pertaining to intoxication in a public place criminal is in conflict with the state law and is void." (*Koehne*, at p. 649.)  A criminal charge or conviction under such a preempted municipal ordinance is therefore invalid.  (*Ibid*.; *Lopez* at pp. 653–654; *Zorn* at pp. 651–652; see also *People v. De Young* (1964) 228 Cal.App.2d 331, 334–335, 337 [Santa Barbara ordinance prohibiting being in any public place or on any private premises in state of intoxication " 'to the annoyance of any other person' " was invalid; "Legislative enactments covering the criminal aspects of intoxication . . . are so extensive in their scope that they clearly show an intention by the Legislature to adopt a general scheme for the regulation of the subject."].)

Plaintiffs contend C.M.C. section 4201 is preempted, and Deputy Billoups did not have reasonable cause to arrest them under section 647(f) because nothing in the record showed they were "unable to exercise care for [their] own safety or the safety of others," or that they "interfere[d] with or obstruct[ed] or prevent[ed] the free use of any street, sidewalk, or other public way" as the state statute—but not C.M.C. section 4201—requires. We agree there is no evidence the deputies arrested plaintiffs for violating section 647(f). The deputies themselves admitted this, insisting Deputy Billoups arrested plaintiffs for violating C.M.C. section 4201.[3]

---

[3] In their Government Code letter, as in their respondents' brief, defendants assert, "The jury . . . impliedly did find, that the arrest of appellants had satisfied all elements of Penal Code section 647(f) under the authority of *In re William G.* (1980) 107 Cal.App.3d 210, 214." The sworn testimony of defendants' own witnesses—most notably defendant Billoups himself— flatly belies this assertion. As we have said, the trial court denied plaintiffs' request that the court instruct the jury on the elements of a section 647(f) violation and the jury made no finding on the elements of that crime.

Defendants cite *In re William G.*, *supra*, 107 Cal.App.3d 210. That case does not assist them. There, a deputy sheriff saw William G., a juvenile, "walking precariously along a public road," " 'staggering very badly.' " The appellate court noted the officer had "grounds . . . to conclude [the minor] was unable to exercise care for his own safety." (*Id*. at p. 214.) Here, none of the arrestees was "walking precariously along a public road." Instead, they were sitting in a legally parked van (Hales), standing on a curb talking with passengers in the van (January), and sitting in a parked car (Carcamo). Billoups testified Hales was "slightly . . . off balance" and Carcamo was "swaying" as she got out of the car. Billoups testified under oath that Carcamo

13

But C.M.C. section 4201 is a void law.  In the trio of 1963 cases we have cited, our Supreme Court held any and all city ordinances criminalizing acts related to public drunkenness are preempted because they conflict with section 647(f), which preempted the field.  (*Koehne*, *supra*, 59 Cal.2d at p. 649; *Zorn*, *supra*, 59 Cal.2d at pp. 651–652; *Lopez*, *supra*, 59 Cal.2d at pp. 653–654.)  The arrests of plaintiffs were justified only if defendants can meet their burden to show the arresting officer had probable cause, which is objectively reasonable cause to believe plaintiffs committed a crime.  (*Gillan*, *supra*, 147 Cal.App.4th at pp. 1044–1045; *Roberts v. City of Los Angeles* (1980) 109 Cal.App.3d 625, 629.)  "California courts speak of 'reasonable cause' and 'probable cause' interchangeably." (*Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 786.)  Can a law enforcement agency have objectively reasonable cause to believe plaintiffs committed a crime if deputies arrest them for violating a statute our Supreme Court declared void more than half a century ago? The answer is no.

In *People v. McNeil* (2002) 96 Cal.App.4th 1302 (*McNeil*), Oakland police officers arrested Charnaye McNeil for violating a city ordinance that prohibited standing in the roadway in a manner that interferes with traffic.  When the officers searched her, they found a significant amount of cocaine base.  McNeil was charged with possession for sale and moved to set aside

---

was not a danger or "safety concern" to herself or anyone else, nor was Hayes.  When asked if January was a danger to himself or anyone else, Billoups answered, "I didn't have any contact with January.  So I have no idea."  He testified all three plaintiffs were arrested for violating the ordinance.

14

the information.  The trial court granted the motion, ruling the municipal ordinance was preempted by state law and therefore void.  (*Id.* at p. 1304.)  The arrest and search were unlawful because "decades-old appellate decisions [held] virtually identical city ordinances to be void," a conflicting state Vehicle Code section preempted the Oakland municipal code section, and "the officers had no probable cause to arrest defendant for violating it even if they believed in good faith that the ordinance was enforceable."  (*Id.* at p. 1305.)

The *McNeil* court agreed.  The California Supreme Court had invalidated "essentially identical" ordinances many decades earlier when it held the Vehicle Code reserved the subject of pedestrian conduct exclusively to the state, thus preempting all local ordinances regulating pedestrians.  (*McNeil, supra,* 96 Cal.App.4th at pp. 1306–1307.)  Because under long-standing controlling precedent the Oakland ordinance was unenforceable, the court distinguished the United States Supreme Court's holding in *Michigan v. DeFillippo* (1979) 443 U.S. 31, 37–38 that the exclusionary rule does not apply to evidence obtained as a result of an arrest made in good faith reliance on a statute *later* found to be unconstitutional.  (*McNeil*, at p. 1305.)  That the controlling precedent did not specifically mention the Oakland ordinance did not matter.  (*Id.* at p. 1307.)  "The relevant case law did not turn on the particular wording of the local ordinances in question.  It construed the statewide Vehicle Code, holding that it preempts and super[s]edes *all* local ordinances purporting to regulate the same subject matter."  (*Ibid.*)

*McNeil* also rejected the contention that the local ordinance was still in the municipal code at the time of the arrest and so was presumptively valid from the point of view of the arresting

15

officers, who "could not reasonably be expected to know that tort cases arising in distant counties had undermined the ordinance's legal foundation." (*McNeil, supra,* 96 Cal.App.4th at p. 1307.) "Fourth Amendment jurisprudence does not sanction blind enforcement of any statute that happens to appear on the books. . . . [T]he test in Fourth Amendment cases is not the good faith of the individual officer in the field, but the good faith of the law enforcement agency of which he or she is a part." (*Id.* at p. 1308.)  Forty years was enough time for the police department to learn that state law preempted the ordinance and to educate its officers.  "That conclusion did not depend on any fine legal parsing or guesswork, but on the plain language of the state Vehicle Code, a body of law with which police officers are expected to be thoroughly conversant.  Any possible doubt about the application of that language to the ordinance in question was settled decades ago." (*Id.* at p. 1309.)

    *People v. Cox* (2008) 168 Cal.App.4th 702 (*Cox*) agreed. The defendant was arrested for violating a Sacramento city ordinance that prohibited walking in the middle of the road if there was a sidewalk.  Like the Oakland ordinance in *McNeil,* it was preempted by the state Vehicle Code.  The defendant's conduct was lawful under the state statute, and so it could not be the basis for a lawful arrest. (*Cox,* at pp. 708–709.)  The officer's good faith belief that the city ordinance was enforceable did not render the detention objectively reasonable. (*Id.* at p. 710.)  "[T]he officers here failed to comprehend the California Vehicle Code, something they are reasonably expected to know." (*Ibid.*)  Although the officer believed the local ordinance was good law, "neither the reasonableness of his belief nor the fact that

16

his belief was held in 'good faith' is relevant in establishing the legality of defendant's detention." (*Id.* at p. 711.)[4]

As in *McNeil* and *Cox*, the deputies here arrested plaintiffs for violating a local ordinance essentially identical to ordinances our Supreme Court invalidated many decades ago because a conflicting state statute preempted them. The municipal ordinance remained—and may still remain—in the code. But even if Deputy Billoups believed C.M.C. section 4201 still was valid, his good faith belief is irrelevant to our determination of whether the arrests were legal.[5] The sheriff's department cannot

_____

[4] The *Cox* court concluded the arrest was illegal but, because the defendant then made the independent decision to flee and resist arrest, the taint was dissipated, and the trial court properly denied his motion to suppress the evidence that he resisted arrest. (*Cox, supra*, 168 Cal.App.4th at pp. 711-712.)

[5] While any good faith belief on Billoups's part does not render plaintiffs' arrests reasonable or supported by probable cause, it may be relevant to Billoups's personal liability for false arrest. Plaintiffs refer in their briefing to Government Code section 820.6. It provides, "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid, or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid, and applicable." (Gov. Code, § 820.6; see generally Gov. Code, § 820.4 [granting public employees immunity for nonnegligent acts in executing or enforcing laws but specifically exempting false arrest and false imprisonment from immunity]; *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 715, 717, 719–721; *Gillan, supra*, 147 Cal.App.4th at pp. 1048–1049 [Government Code section 820.4 preserved common law rule that public employee can be liable for false imprisonment].) It appears there was litigation about governmental immunity

meet its burden to show its deputies had probable cause to arrest plaintiffs by relying on a void statute.

The trial court rejected plaintiffs' preemption argument in part because this is a civil rather than a criminal case. But probable cause for arrest in a criminal proceeding is the same as probable cause in a civil case for damages alleging false arrest. In *McGowan v. City of San Diego* (1989) 208 Cal.App.3d 890 (*McGowan*), McGowan was tried and convicted for driving under the influence. The municipal court had denied his motion to suppress on the ground his arrest was unlawful. McGowan then filed a civil complaint for damages against the city for false arrest and imprisonment, assault and battery, and violation of his civil rights (the latter two claims based on excessive force in taking his blood sample). The trial court granted the city's motion for summary judgment, finding collateral estoppel barred the entire complaint. (*Id.* at pp. 893–894.)

The *McGowan* court agreed the denial of the suppression motion in the criminal case justified summary adjudication on the false arrest claim in the civil action: "The finding of probable cause by the municipal court for the stop and arrest is dispositive of and conclusive on the issue of the false arrest since the probable cause in the criminal proceeding is identical to the probable cause required in a later civil complaint."[6]

_____

in the trial court. None of that litigation is before us. The parties are of course free to litigate any governmental immunity issues on remand to the trial court.

[6]   The causes of action based on the continued detention and the taking of the blood sample survived, however, because the suppression motion made no findings on those issues. (*McGowan, supra*, 208 Cal.App.3d at pp. 895–896.)

18

(*McGowan, supra,* 208 Cal.App.3d at p. 896; see also *Ayers v. City of Richmond* (9th Cir. 1990) 895 F.2d 1267, 1271 ["threshold issue" in both arrest and later civil rights case was whether arrests were constitutional]; *Levin, supra*, 158 Cal.App.4th at pp. 1017–1018 [discussing reasonable or probable cause in civil action for false arrest interchangeably with Fourth Amendment authorities].)

Defendants do not argue we should not follow *McNeil* and *Cox* because probable cause has a different meaning in the civil context, nor do they explain how *McGowan* is wrong. They point out the Vehicle Code contains a section specifically stating its provisions apply throughout the state, so local authorities may not enact their own ordinances on matters the code covers. (Veh. Code, § 21.) And, they say, Penal Code section 647(f) is silent on preemption. But *McNeil* relied not on the Vehicle Code itself, but on *Pipoly v. Benson* (1942) 20 Cal.2d 366, 372. That case held local vehicle ordinances were preempted. *McNeil* cited what is now Vehicle Code section 21 only as evidence of the Legislature's intent to preempt the field. (*McNeil, supra,* 96 Cal.App.4th at p. 1306.) The holdings in *Koehne, Zorn,* and *Lopez* that the Legislature intended to preempt the field of regulation of public drunkenness are no less controlling.

A local ordinance of the kind the California Supreme Court held in 1963 was void as preempted by state law cannot meet law enforcement's burden to show probable cause to defeat a plaintiff's civil action for false arrest. As defendants insisted plaintiffs' arrest was based solely on the preempted ordinance, the trial court erred when it instructed the jury that, if Billoups proved plaintiffs were "drunk in public, in violation of Carson Municipal Code section 4201, [this] would establish that

Deputy Billoups had reasonable cause to believe that each of the plaintiffs had committed a crime in his presence, [and] then Deputy Billoups had the authority to arrest the plaintiffs without a warrant."

## 2. *The erroneous instruction was prejudicial*

In determining whether instructional error was prejudicial, a reviewing court evaluates " '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled' " to determine whether it is "reasonably probable" that erroneous instructions misled the jury. (*Red Mountain, LLC. v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 359; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 581, fn. 11; *Bowman, supra,* 186 Cal.App.4th at p. 304.) "A 'reasonable probability' in this context 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 682; *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

It is reasonably probable in this case that the erroneous instruction prejudicially affected the jury's finding that Deputy Billoups had reasonable cause to arrest plaintiffs. As the trial court tacitly acknowledged, the evidence was more than sufficient to establish the elements of false arrest and "the only issue in [the] case [was] whether or not [Deputy Billoups] had probable cause to arrest." Indeed, the jury found, consistent with the undisputed evidence, that Billoups arrested plaintiffs without a warrant. For his part, Billoups testified Carcamo was not a danger to herself or others, she was not blocking any public way, she did not obstruct traffic when she crossed the street, and, therefore, he did not arrest her for a violation of section 647(f).

Instead, Billoups was clear that he arrested plaintiffs for violating the preempted Carson ordinance. Consistent with that testimony, the court gave the jury the erroneous instruction, and the special verdict form asked the jury to decide whether "Deputy Billoups observe[d] each of the Plaintiffs drunk in public in violation of Carson Municipal Code [s]ection 4201 [which], if proved, would constitute reasonable cause to believe each of the Plaintiffs had committed a crime in Deputy Billoups's presence?" Because the instruction and special verdict form afforded no other basis to find Billoups had reasonable cause to arrest plaintiffs without a warrant, the erroneous instruction was plainly prejudicial and the judgment rendered on the jury's special verdict findings must be reversed.[7] (See *Bowman, supra,* 186 Cal.App.4th at pp. 304–305, 332.)

---

[7] Because we have concluded the instruction erroneously stated a violation of the preempted Carson ordinance affords a basis for a reasonable cause finding, we need not address plaintiffs' arguments challenging the admission of the defense expert's testimony.

21

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.  Plaintiffs are entitled to their costs.

**CERTIFIED FOR PUBLICATION**


EGERTON, J.

We concur:



LAVIN, Acting P. J.



KALRA, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.