Filed 12/28/23  P. v. Valdez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C098054 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF2200624) |
| v. | |
| EDUARDO VALDEZ, | |
| Defendant and Appellant. | |

Defendant Eduardo Valdez flipped his car, spun out, hit a road sign, and left the scene of the accident.  An officer apprehended him, searched his backpack, and found a loaded magazine, a loaded handgun, methamphetamine, drug paraphernalia, and burglary tools.  The officer found more methamphetamine in defendant's pants pocket.  After the trial court denied his motion to suppress, defendant pleaded no contest to possession of a controlled substance with a firearm, possession of burglar's tools, and hit and run.  On appeal defendant contends that the trial court improperly denied his motion to suppress

1

because there was no lawful search incident to arrest and the inevitable discovery doctrine did not apply. We will affirm the judgment.

FACTUAL BACKGROUND

At the motion to suppress and preliminary hearing, California Highway Patrol Officer Billy Saukkola testified that on a morning in March 2022 he responded to a report of a hit and run. A gray Chevrolet Camaro was rolled over onto its roof and in a ditch. The Camaro had knocked over a road sign when it spun into the ditch. The person who reported the hit and run said that the driver was walking northbound away from the car. Dispatch told Officer Saukkola that the driver was described as a male with a beard and wearing a baseball cap, blue jeans, and a black shirt. Dispatch also told Officer Saukkola that the person walking away from the Camaro had an injury to his arm. While Officer Saukkola spoke to emergency services personnel, who also reported to the scene, a driver going southbound yelled out the window, "Your driver is over at the gas station." Officer Saukkola got in his patrol car and drove northbound to the gas station approximately one mile from the Camaro.

When Officer Saukkola got to the gas station, he saw defendant talking to a hotel employee. Defendant matched the description of the driver from dispatch and had a cut on his right arm that was bleeding a lot. The bleeding was serious enough that Officer Saukkola thought defendant needed immediate medical attention. Defendant also had a black backpack next to his left foot. Officer Saukkola asked defendant if he was the driver of the Camaro, and defendant replied that he was the right front passenger. Officer Saukkola noticed that people were coming in and out of the gas station, but there were two people, a man and a woman, close to him who were intently watching him speak to defendant. Officer Saukkola asked what they were doing, and they said, "Just watching." When Officer Saukkola asked if they knew defendant, they said they did not. When Officer Saukkola asked defendant if he knew the man and woman watching them, he also

2

said he did not. At this point, Officer Saukkola was concerned because he was alone with no other law enforcement officers nearby.

Officer Saukkola got on the radio and called for medical assistance for defendant. While Officer Saukkola was on the radio, the woman walked past him and defendant, and without stopping, picked up the black backpack and walked into the convenience store. Shortly thereafter, medical assistance arrived. Officer Saukkola wanted to follow the woman into the store, so he told the medical responders to not let defendant go anywhere. Officer Saukkola testified that he had reason to believe under the totality of the circumstances that the backpack possibly contained contraband, drugs, or guns that could be destroyed. Officer Saukkola testified that he considered defendant to be detained at this point, but he did not pat him down as he normally would, because defendant was covered in blood. Officer Saukkola did not handcuff defendant either before following the woman into the store, because "he was being treated for a pretty serious wound that was bleeding heavily."

Officer Saukkola found the woman in the store and asked her if the backpack was hers. She responded that it was defendant's, and defendant had asked her to grab it for him. While Officer Saukkola reached for the backpack, he felt a man standing over his shoulder. When Officer Saukkola turned to face him, the man told the woman to give Officer Saukkola the backpack. After the woman gave Officer Saukkola the backpack, she and the man walked out of the store, got in their car, and left. Officer Saukkola testified that again, under the totality of the circumstances, he had "a bad feeling about what [was] in [the] bag." Officer Saukkola was still the only law enforcement officer at the scene, there were a lot of people at the convenience store, and he did not know whether the woman and the man were still in the area or whether anyone else was involved in the hit and run.

Officer Saukkola walked outside the store and unzipped the backpack. He was standing approximately five feet away from defendant, who was still being treated by

3

medical services. When Officer Saukkola unzipped the backpack, he saw a clear plastic magazine with rounds in it. Officer Saukkola immediately handcuffed defendant's uninjured arm. At this point, another officer arrived to assist. Officer Saukkola asked the other officer to hold defendant's handcuff while he searched the backpack. Officer Saukkola then also found a loaded handgun, approximately 40 grams of methamphetamine, needles, scales, cell phones, a shaved key, screwdrivers, and sharpened utensils. Officer Saukkola testified that at the time he searched the backpack, he believed defendant had committed hit and run but had not completed his investigation yet. Officer Saukkola testified that he unzipped the backpack for his safety and the safety of other patrons and medical services personnel, and he did not want to set the backpack aside to continue his investigation of defendant since someone had just tried to take it away.

Officer Saukkola told defendant that he was under arrest and searched him. During the search, Officer Saukkola found more methamphetamine in defendant's pants pockets. Officer Saukkola also found the key to the Camaro. When Officer Saukkola pulled down defendant's shirt, he saw a red mark going over defendant's left shoulder, which was consistent with defendant being the driver. At the police station, defendant admitted that the methamphetamine was his and that he had the handgun for protection.

The trial court denied defendant's motion to suppress, because it found the search was justified based on search incident to arrest and inevitable discovery. The trial court specifically found that Officer Saukkola had probable cause to arrest defendant for the hit and run because of defendant's admission to Officer Saukkola that he was in the car and because no one else was standing with defendant when he was found. The trial court reasoned that once defendant was arrested and taken to jail, officers would have found what was in the backpack during a booking search.

After the trial court denied defendant's motion to suppress, defendant pleaded no contest to possession of a controlled substance with a firearm (Health & Saf. Code,

4

§ 11370.1), possession of burglar's tools (Pen. Code, § 466), and hit and run (Veh. Code, § 20002, subd. (a)) in exchange for the remaining counts being dismissed and a low term cap. The trial court sentenced defendant to two years of probation but suspended execution of the sentence pending this appeal.

DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress, because the search of his backpack was not justified as a search incident to arrest or under the inevitable discovery doctrine. Specifically, defendant argues that the circumstances do not support a lawful search incident to arrest, because Officer Saukkola lacked probable cause to arrest defendant for hit and run and had possession and control of the backpack when he opened it. We conclude that Officer Saukkola had probable cause to arrest defendant for hit and run and that defendant's backpack was a natural extension of his person; therefore, the search of defendant's backpack was justified as a search incident to arrest. Accordingly, we need not address defendant's argument that the inevitable discovery doctrine does not apply in this case.

When reviewing a trial court's denial of a motion to suppress, we defer to the trial court's factual findings, express or implied, where supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) "In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*Glaser*, at p. 362.)

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) Warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States* (1967) 389 U.S. 347, 357.) One such exception is a search incident to arrest, which " 'has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into

5

official custody and lawfully detained.' [Citation.] It is the fact of the arrest that justifies the search." (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1214.)

A search incident to arrest allows a police officer to conduct a contemporaneous warrantless search of the arrestee's person and the area " 'within his immediate control,' " i.e., "the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel v. California* (1969) 395 U.S. 752, 763.) While "a search of an arrested person is limited to the person of the arrestee and the area under that person's immediate control," "normal extensions of the person remain subject to search and . . . articles customarily carried by an arrested person fall within the area of his immediate control." (*People v. Belvin* (1969) 275 Cal.App.2d 955, 958-959.) Because such articles "serve as possible sources of concealed weapons and of evidentiary items [and] also normally accompany the arrested person on his removal to some other place," they may be searched even when the arrestee cannot access the article and the police officer is in possession of the article. (*Ibid.*) A backpack is one such article. (*In re Humberto O.* (2000) 80 Cal.App.4th 237, 243-244.) If the backpack is "in use at the time of arrest, even though [it] may not [have] be[en] on the immediate person of the arrestee at the moment of arrest." (*Belvin*, at p. 958.) Further, "[w]hen a custodial arrest is made, and that arrest is supported by independent probable cause, a search incident to that custodial arrest may be permitted, even though the formalities of the arrest follow the search." (*People v. Macabeo*, *supra*, 1 Cal.5th at p. 1218, citing *Rawlings v. Kentucky* (1980) 448 U.S. 98.)

We begin with the probable cause to arrest defendant. "Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." (*People v. Kraft* (2000) 23 Cal.4th 978, 1037.) "The standard of probable cause to arrest is the probability of criminal activity, not a prima facie showing." (*People v. Lewis* (1980) 109 Cal.App.3d 599, 608.) In deciding whether probable cause exists,

courts must examine the "totality-of-the-circumstances" at the time of the arrest. (*Illinois v. Gates* (1983) 462 U.S. 213, 233.)

Here, Officer Saukkola was searching for the driver of the Camaro who had committed the crime of hit and run. Defendant matched dispatch's description of the driver, including having an injury to his arm. Defendant was at a gas station north of the Camaro, which was consistent with the report from the passing driver. Further, defendant admitted he was in the Camaro. Though defendant claimed he was the front passenger, no one else was with defendant, and it was reasonable for Officer Saukkola to question the veracity of defendant's statement. Based on these facts, a person of ordinary care and prudence would have a strong suspicion that defendant was guilty of hit and run. Thus, there was probable cause to arrest defendant for hit and run.

Because Officer Saukkola had probable cause to place defendant under custodial arrest for hit and run and did place him under custodial arrest, he was permitted to search his backpack incident to that arrest even if the search preceded the arrest. (Veh. Code, §§ 20002, 40303; *People v. McKay* (2002) 27 Cal.4th 601, 619-620.) Since it was a custodial arrest, the backpack would accompany defendant to the station. In addition, defendant's backpack was an extension of his person. Defendant had carried his backpack from the scene of the hit and run to a gas station, and it was by his feet when Officer Saukkola initially saw him. Defendant asked someone else to take the backpack from him to conceal his belongings. As defendant later admitted, the backpack contained his belongings. Defendant was thus using the backpack at the time of the arrest. Even though Officer Saukkola was holding the backpack and defendant was five feet away from him, the backpack still fell within defendant's immediate control, was a natural extension of his person, and was subject to search incident to his arrest.

Accordingly, the trial court did not err in denying defendant's motion to suppress based on search incident to arrest.

DISPOSITION

The judgment is affirmed.

/s/
Wiseman, J.*

We concur:

/s/
Robie, Acting P. J.

/s/
Krause, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.